ALBEE HOMES, INC., and Albee Summit
Homes, Inc., Appellants,

v.

Meir LUTMAN.

No. 17013.

United States Court of Appeals
Third Circuit.

Argued Sept. 17, 1968.

Decided Jan. 9, 1969.

Pace Reich, Modell, Pincus, Hahn & Reich, Philadelphia, Pa., for appellants.

Barry E. Ungar, Goodis, Greenfield, Narin & Mann, Philadelphia, Pa. (Allen J. Levin, Philadelphia, Pa., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

KALODNER, Circuit Judge.

Plaintiffs-appellants, Albee Homes, Inc. and Albee Summit Homes, Inc., brought this diversity action below to recover amounts allegedly due them from the defendant Meir Lutman. Their Complaint alleged that while defendant was employed by plaintiffs (1) he received loans and advances totaling $25,780.18 which had never been repaid; (2) he had charged personal expenses to plaintiffs in the amount of $51,119.75; and (3) he had obtained and retained possession of a promissory note that was the property of plaintiffs. The basis for the first two claims was a series of checks drawn on Summit's account and allegedly used for defendant's personal

benefit. In order to expedite the trial of the case, defendant's attorney stipulated that the plaintiffs' bookkeeper would testify that the books of Albee Summit showed charges to the defendant arising from 134 separate checks totaling $55,284.31. Defendant conceded at the trial that he had received checks and salary totaling $87,000, but denied that some of the checks allegedly chargeable to him had been used for his personal expenses—including two of the checks covered by the stipulation. In addition, defendant alleged as affirmative defenses two releases: one made in October, 1960 and the other on November 14, 1961. At the trial, defendant presented evidence as to the first release. No evidence was offered by any of the parties relating to the second release.

Defendant also brought three counterclaims against Albee Homes. The first counterclaim alleged he had suffered damages of $660,000 as a result of certain fraudulent misrepresentations in a stock transaction; the second alleged he had not received $15,058.40 ($18,903.00 with interest) owed him as part of his agreed compensation; and the third alleged that he had suffered damages of $464,000 as a result of Albee's repudiation of a stock option that it had given him. The third count was withdrawn after all evidence had been presented to the jury.

The jury returned a verdict for defendant and against plaintiffs with respect to all of their claims. It found in favor of plaintiffs on defendant's first counterclaim, and for defendant on his second counterclaim. The District Court ordered entry of judgment in accordance with the verdicts, and Albee and Summit filed motions for a new trial and for judgment n. o. v. on their complaint and on defendant's second counterclaim. The District Court later granted plaintiffs a new trial as to six checks (## 5132, 5133, 5144, 5559, 5633 and 5647) drawn after October, 1960, the date of the al-

leged first release, four of these checks being concededly chargeable to defendant. As to all other matters, plaintiffs' motions were denied.[1]

Plaintiffs' appeal followed.

On May 14, 1968, we remanded to the District Court to afford it opportunity to grant certification under Rule 54(b), F.R.C.P., since less than all of the plaintiffs' claims and defendant's counterclaims had been finally adjudicated. The following day, the District Court certified that there was no just reason for delay and, pursuant to Rule 54(b), ordered that judgment be entered in favor of defendant on Count II of his counterclaim.

On this appeal plaintiffs contend that (1) four checks (##5133, 5144, 5559 and 5633) drawn after the October, 1960 release were concededly chargeable to defendant, and since defendant presented no evidence as to the second release, the jury acted in clear disregard of the evidence adduced in not finding for the plaintiffs as to these checks, and this action accordingly tainted the entire verdict, requiring a new trial as to all of plaintiffs' claims; (2) as to these checks and one other (#5647) plaintiffs are entitled to judgment as a matter of law, and the trial court erred in not granting them judgment n. o. v. as to these checks; (3) since defendant had pleaded the second release in his Answer to plaintiffs' Complaint, it was thereby placed in issue, and the District Court erred, when in its Pre-Trial Order, (a) it directed that plaintiffs could not adduce evidence as to the second release in bar of defendant's counterclaims, and (b) it refused to allow plaintiffs to amend their Reply to defendant's counterclaims so as to plead the second release; (4) the District Court committed prejudicial error in allowing defendant to withdraw two checks from the stipulation relating to checks charged on Summit's books to the defendant; and (5) the District Court committed prejudicial error in the man-

---

1. The District Court also granted defendant a new trial with respect to Count I of his counterclaim, but this order is not before us on this appeal.

ner in which it addressed plaintiffs' counsel.

■ As noted above, we earlier remanded this case to afford the District Court the opportunity to avail itself of the 54(b) procedure since less than all the claims had been finally adjudicated. Upon remand, the District Court ordered that final judgment pursuant to Rule 54(b) be entered as to Count II of defendant's counterclaim, but did not do so with respect to any part of plaintiffs' claims against defendant. Since the Judgment and Orders of the District Court, insofar as they relate to plaintiffs' claims, are not final and do not come under any of the categories of interlocutory decisions from which an appeal lies under 28 U.S.C. § 1292, we are foreclosed from considering plaintiffs' first two contentions on this appeal.[2]

As to plaintiffs' third contention concerning the correctness of the District Court's Pre-Trial Order relating to the second release, we find that there was no error in the ruling of the District Court therein.

In their Reply to defendant's counterclaims, plaintiffs offered only denials and failed to allege any release as an affirmative defense. At a pre-trial conference a few minutes before the trial began, plaintiffs for the first time raised the issue of the second release, contending that on the basis of defendant's pleading, they were entitled to show that such release was a mutual one barring defendant's counterclaims. Alternatively, they contended that the trial judge should grant them leave to amend their Reply to include the second release as an affirmative defense.

The trial judge, noting that plaintiffs had filed their Reply January 13, 1964, and then had done nothing until the morning of trial, February 6, 1967, held that under Rule 8, F.R.C.P., plaintiffs had waived this defense, and denied leave to amend. He specifically rejected plaintiffs' contention that they could

prove the release as a defense without pleading it in their Reply "since the release is not attached to the answer, there is no showing that it is the same release, and since the pleading of it by defendant did not put the defendant on notice that the plaintiffs in any way intended to rely on the release."

■ We are of the opinion that by pleading the second release in his Answer, defendant placed the release in issue only as to plaintiffs' claims; we do not think that, without more, it was in issue as regards defendant's counterclaims. In so holding we especially rely on two circumstances: (1) no evidence as to the release was introduced by either party, and (2) defendant's pleading in no way indicated that the release was mutual or that it might otherwise present a bar to his own claims.

In the situation before us here, we think the applicable law is aptly stated by Professor Moore:

"If an affirmative defense is not pleaded it is waived to the extent that *the party who should have pleaded* the affirmative defense may not introduce evidence in support thereof, unless the adverse party makes no objection in which case the issues are enlarged, or *unless an amendment to set forth the affirmative defense is properly made.*" 2A Moore, Federal Practice ¶ 8.27[3], at 1853 (2d ed. 1968). (citations omitted; emphasis supplied).

It must be noted that we are not holding that if a party fails to raise an affirmative defense in his original responsive pleading, he is forever barred from raising it; we merely hold that normally the proper remedy is to move for leave to amend under Rule 15, F.R.C.P.

We are thus faced with the question whether the District Court abused its discretion in denying plaintiffs' motion for leave to amend their Reply.

Plaintiffs rely on Rule 15(a), F.R.C.P., and the decision of the Supreme Court in Foman v. Davis, 371 U.S. 178,

---

2. We express no opinion as to whether 54 (b) certification as to any part of plaintiffs' claims would have been proper in this situation.

83 S.Ct. 227, 9 L.Ed.2d 222 (1962), for the proposition that amendments to pleadings should be "freely given." We note, however, that in *Foman* the Supreme Court qualified the "freely given" standard by declaring (p. 182, 83 S.Ct. p. 230):

> "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. *In the absence of any apparent or declared reason—such as undue delay,* bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave should, as the rules require, be 'freely given'." (emphasis supplied).

■ In view of the circumstances, we cannot say that the District Court abused its discretion in denying leave to amend here. The record discloses that the plaintiffs waited over three years to raise this issue and then did so only when the trial was minutes away, even though they make no claim that the defense was not known to them from the start. It would be unwarranted for us to substitute our judgment for that of the trial judge and declare that he abused his discretion in finding undue delay.

Plaintiffs' fourth contention is that the District Court committed prejudicial error in allowing defendant, at trial, to withdraw two checks from the stipulation relating to checks charged to defendant on Summit's books. Since both checks were drawn before the date of the alleged October, 1960 release, and the jury clearly found that there was such a release in returning the verdict for defendant on plaintiffs' claims, any error here, and we find none, would not be prejudicial.

Plaintiffs' final contention is that they were prejudiced by the conduct of the trial judge in the manner in which he addressed their counsel at trial. The few remarks of the trial judge, culled from a record of over 700 pages, taken out of context, do not support their contention; when the record as a whole is read, it reveals that the claim is patently without substance and that the trial judge commendably performed his functions.

In accordance with what has been said plaintiffs' appeal will be dismissed for lack of appellate jurisdiction insofar as it relates to the District Court's modified entry of judgment, with costs, in favor of defendant and against plaintiffs in the plaintiffs' action against defendant; and the judgment entered in favor of defendant and against Albee Homes, Inc., in the amount of $18,903.00, with costs, on the second count of defendant's counterclaim based on the salary agreement, will be affirmed.