**Sidney ADVOCAT, Plaintiff,**

v.

**NEXUS INDUSTRIES, INC., Liberty Circle Corporation, The Equilink Corporation, and Amy–David Corporation, Defendants.**

Civ. A. No. 78–87.

United States District Court,
D. Delaware.

Aug. 26, 1980.

William D. Fletcher, Jr., of Schmittinger & Rodriguez, P. A., Dover, Del., for plaintiff; Morton J. Owrutsky and Walter P. Drake, of Perdue, Owrutsky, Rayne & Davis, Salisbury, Md., of counsel.

Kevin Gross, of Morris & Rosenthal, P. A., Wilmington, Del., for defendants; J. Lawrence Blades and Thomas C. Murray, Jr., of Finley, Kumble, Wagner, Heine, Underberg & Casey, New York City, of counsel.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

This diversity action involves four claims[1] (causes of action 2, 3, 4 and 5) by Sidney Advocat ("plaintiff") against his former employer, the Liberty Circle Corporation ("Liberty"),[2] based on a number of statements or promises allegedly made by officers or agents of Liberty concerning plaintiff's right to receive a pension in a certain amount. The case is presently before the Court as a result of a number of pretrial motions filed by the defendants.

## BACKGROUND

■ Plaintiff originally commenced this action in the Circuit Court for Wicomico County, Salisbury, Maryland, on March 3, 1977. (See, Docket Item ["D.I."] 2). Defendants then removed the action to the United States District Court for the District of Maryland on April 1, 1977. (Id.). Finally, the action was transferred to this District pursuant to plaintiff's motion[3] under 28 U.S.C. § 1404(a) on March 8, 1978. (D.I. 1).

Plaintiff now asserts four separate causes of action. They are: (1) an express contract for pension benefits; (2) a promise to pay pension benefits which is enforceable on the basis of promissory estoppel; (3) fraudulent misrepresentations as to plaintiff's right to receive pension benefits; and

(4) negligent misrepresentations as to plaintiff's right to receive pension benefits. Defendants answered the complaint on August 7, 1978. (D.I. 7). In that answer they denied all of the allegations of the complaint and asserted a defense of failure to state a claim upon which relief can be granted.

Following defendants' answer the parties engaged in discovery for a period of approximately two years. A pretrial conference was then held on June 23, 1980. At that conference counsel for defendants for the first time stated that he believed certain affirmative defenses were applicable to this action. Following that conference defendants' attorney filed a motion on July 15, 1980, for permission to amend the answer to assert the affirmative defenses of the statute of frauds and the statute of limitations. (D.I. 81). All of the defendants also moved for judgment on the pleadings or in the alternative for summary judgment based on those two defenses. (Id.). Finally, defendant Nexus moved for summary judgment on the additional ground that plaintiff had not alleged any contract or transaction with it, and had not alleged any basis upon which Nexus could be held liable for the amount of any judgment obtained against any other defendant. (D.I. 81). The motions will be considered in the order stated.

### Motion to Amend

■ Rule 8(c) of the Federal Rules of Civil Procedure provides that all affirmative defenses, including the defenses of the statute of frauds and the statute of limitations, must be set forth affirmatively in an answer to a pleading. A failure to plead an

1. The original complaint asserted five causes of action, (first for debt for services rendered; second on contract; third on promissory estoppel; fourth on fraud and deceit; and fifth on negligent misrepresentation) (Docket Item 2). However, the first cause of action based on debt for services rendered was abandoned by the plaintiff in the Pretrial Order, par. (a). (Docket Item 72).

2. Three other corporations are also named as defendants. The first, Nexus Industries, Inc.,

was the parent corporation of Liberty. The second, The Equilink Corporation, is simply Liberty with a new name; and the third, Amy–David Corporation, is a corporation organized by former officers or agents of Liberty which purchased Liberty's dress manufacturing business.

3. A plaintiff may move to transfer an action under § 1404(a). See, James v. Daley & Lewis, 406 F.Supp. 645, 648 (D.Del.1976).

affirmative defense results in a waiver of that defense unless the party is allowed to amend its pleading. *See, Albee Homes Inc. v. Lutman,* 406 F.2d 11, 13 (C.A.3, 1969). The defendants in this case admit that they did not plead the statute of frauds or the statute of limitations in their answer. Therefore, they have waived those defenses unless an amendment to their answer is allowed.

The standards for amending pleadings are established by Rule 15 of the Federal Rules of Civil Procedure. Under that rule a party may not normally amend his pleading[4] without obtaining the permission of the Court. The rule also provides that permission shall be freely given when justice so requires. Those provisions have been interpreted to mean that motions to amend should generally be granted unless the Court finds: that there has been undue delay; that the motion is being made in bad faith; or that the allowance of the motion would unduly prejudice the non–moving party's case. *Forman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Plaintiff argues that the motion to amend should be denied because there has been undue delay. Clearly, the plaintiff is correct in asserting that there has been a significant delay. The first time that the defendants mentioned these affirmative defenses was more than three years after the complaint was filed, and almost two years after their answer was filed.

Furthermore, defendants have not offered any suitable explanation for this delay. They contend in their brief that the delay was reasonable because they had difficulty understanding the plaintiff's "extended, convoluted complaint." That argument, however, does not withstand analysis. The complaint is sufficiently clear with regard to the facts which are relevant to the affirmative defenses of the statute of frauds and the statute of limitations. Moreover, even if the defendants were con-

fused by the complaint, they certainly obtained all the clarification they reasonably needed when they took plaintiff's deposition in May of 1979, yet they still delayed for more than a year thereafter before moving to amend their answer. This long delay could properly be characterized as undue.

■ On the other hand, defendants argue that the "undue delay" is not a sufficient justification standing alone to deny their motion to amend. They contend that there must be some showing that the delay has prejudiced the nonmoving party in some significant way before a motion to amend may be denied. That contention is, of course, correct as an abstract principle. *See, Cornell & Co., Inc. v. Occupational Safety And Health Review Commission,* 573 F.2d 820, 823 (C.A.3, 1978); *Deakyne v. Commissioners of Lewes,* 416 F.2d 290, 300 n.19 (C.A.3, 1969). As a practical matter, however, any delay in asserting an affirmative defense for a significant period of time will almost invariably result in some "prejudice" to the nonmoving party. The Court concludes, therefore, that the proper standard is one that balances the length of the delay against the resulting prejudice. In other words, the longer the period of an unexplained delay the less will be required of the nonmoving party in terms of a showing of prejudice. *Head v. Timken Roller Bearing Company,* 486 F.2d 870, 873–74 (C.A.6, 1973); *Albee Homes, supra,* 406 F.2d at 14.

■ Plaintiff contends that he will be prejudiced if the motion is granted and the statute of limitations defense is found to be valid, because he would then be forced to institute a new action in New York and wait another two or three years for a trial date. Plaintiff's argument is essentially that if the defenses had been raised in a timely manner he could have commenced another action in New York two years ago and that suit would now be ready for trial

4. With regard to an answer there are two exceptions to this rule. A party may amend his answer once as a matter of course within 20 days after it is served and he may amend it at

any other time if the other party consents in writing. Rule 15(a), F.R.Civ.P. Neither of these exceptions is available to the defendants in this case.

in that jurisdiction. He contends that this anticipated delay of the trial in New York would be particularly prejudicial because he is now 70 years old and he might not live to see the conclusion of a new action brought in New York.

There are two serious problems with this argument. First, if an action could be maintained in New York, it seems likely that it could be ready for trial in a relatively short time. All of the discovery in this case has been completed and the matter is ready for trial in this Court. Thus, plaintiff's claim that there would be a two or three year delay in New York seems exaggerated.

The second problem with plaintiff's argument is that it assumes that another action could be brought in New York and that such an action would not be subject to the Delaware statute of limitations. In fact, however, New York has a "borrowing statute" which provides in part that:

[a]n action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued.

7B McKinney's Consol. Laws of N.Y. § 202. In addition, New York follows the modern conflicts principle that a cause of action accrues in the jurisdiction with the principal interest and the most significant contacts. *Martin v. Julius Dierck Equipment Co.*, 52 A.D.2d 463, 384 N.Y.S.2d 479 (2nd Dept. 1976), aff'd 43 N.Y.2d 583, 403 N.Y.S.2d 185, 374 N.E.2d 97 (1978). Thus, in this case, since plaintiff was employed in Delaware and performed all his services for Liberty here, it seems likely that New York would also apply the Delaware statute of limitations. The Court concludes, therefore, that the delay in asserting the statute of limitations defense has not prejudiced the plaintiff by preventing him from obtaining a prompt trial of this matter in New York.

Plaintiff has not suggested that he would be prejudiced in any other way by the granting of the motion to amend. There is no need for further discovery in order to resolve the merits of the defenses and a determination of the merits of the defenses will not delay the trial here. The Court concludes, therefore, that defendants' motion to amend their answer should be granted. *See, American Electric Power Co. v. Westinghouse Electric Corp.*, 418 F.Supp. 435, 443 (S.D.N.Y.1976).

### Statute of Frauds Defense

Defendants contend that plaintiff's contract and promissory estoppel claims (causes of action 2 and 3) are barred by the Delaware Statute of Frauds. *See* 6 *Del.C.* § 2714. The Court has concluded, however, that the Delaware statute is not applicable to this case.

■ Delaware courts determine the enforceability of an oral promise according to the statute of frauds of the state where the contract was made. *Dietrich v. Texas National Petroleum Co.*, 193 A.2d 579, 584 (Del.Super.Ct.1963); *Smith v. Onyx Oil & Chemical Co.*, 218 F.2d 104, 109 (C.A.3, 1955). In this case, plaintiff testified at his deposition that he was first contacted by officers or agents of Liberty's predecessor ("Liberty Circle") at his home in Maryland in the spring of 1968. (D.I. 45, pp. 6, 11–12). At that time, plaintiff and the agents of Liberty Circle engaged in negotiations concerning the possible employment of plaintiff by Liberty Circle. (D.I. 45, pp. 12–14). According to plaintiff the parties eventually agreed that plaintiff would begin to work immediately and that he would have a proposed written agreement drawn up to submit to Liberty Circle for approval. (D.I. 45, p. 14). Plaintiff did have a contract drawn up but it was rejected by Liberty Circle. (D.I. 45, pp. 16–17). A second proposed contract was then drafted and submitted to Liberty Circle. (D.I. 45, p. 17). The second draft was also not accepted, and a couple of months later plaintiff met with an agent of Liberty Circle in New York and they agreed that a written contract was not necessary. They then shook hands to signify the binding nature of their oral agreement. (D.I. 45, pp. 17–18).

Based on the above testimony there is a question of fact as to whether the alleged oral contract was formed in Maryland at the conclusion of the initial negotiations or whether it was concluded sometime later when the parties shook hands to signify agreement in New York. The Court finds it unnecessary to resolve this question of fact because the alleged oral contract would be unenforceable under the law of either Maryland or New York.

Both Maryland and New York have statutes of frauds which render oral agreements unenforceable if they are not to be performed within one year.[5] Both of those statutes would bar enforcement of the oral contract that plaintiff alleges was formed in 1968.

■ According to plaintiff's allegations, the contract required plaintiff to work for Liberty until he was 65 years old in exchange in part for a promise of a pension in a certain amount. Since plaintiff was 58 years old in 1968 the contract essentially required him to work for seven years in exchange for a specified pension. (D.I. 45, p. 13). Obviously that contract could not possibly have been performed by plaintiff within one year. An action based on that contract would be barred by both the Maryland and the New York statutes of frauds.

■ Plaintiff contends, however, that the contract is enforceable despite the statute of frauds by virtue of the doctrine of part performance. The Court does not agree. Under New York law an oral contract of employment cannot be taken out of the statute of frauds by part performance. *Deutsch v. Textile Waste Merchandising Co.*, 212 App.Div. 681, 209 N.Y.S. 388 (1925); *see also, Pollard v. Meyer*, 61 A.D.2d 766, 402 N.Y.S.2d 15, 16 (N.Y.Sup.Ct.1978); *Konigsberg v. Security National Bank*, 66 F.R.D. 439, 443 (S.D.N.Y.1975). Maryland law is in accord with this view. *See, Kline v. Lightman*, 243 Md. 460, 221 A.2d 675, 682 (Md.Ct. of App.1966); *Eastern Woodworks v. Vance*, 206 Md. 419, 112 A.2d 231, 235 (Md.Ct. of App.1955). Thus, the Court concludes that the alleged oral contract is not enforceable under the doctrine of part performance. Consequently, summary judgment must be granted against plaintiff and in favor of the defendants with regard to plaintiff's contract and promissory estoppel[6] causes of action (the second and third causes of action).

### Statute of Limitations Defense

■ Defendants next contend that plaintiff's fourth and fifth causes of action[7] based on fraud and negligent misrepresentations are barred by Title 10 Delaware Code Section 8111, which provides in pertinent part:

[n]o action for recovery upon a claim for wages . . . or personal services performed . . . or for any other benefits arising from such work, labor or per-

---

**5.** The Maryland statute provides in pertinent part:

No action may be brought:
(3) upon any agreement that is not to be performed within the space of one year from the making thereof;

unless the contract or agreement upon which the action is brought, or some memorandum or note of it is in writing and signed by the party to be charged, or some other person lawfully authorized by him. 39C Md.Code Ann. § 1(3). The New York statute similarly provides:

Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:

(1) By its terms is not to be performed within one year from the making thereof.

New York General Obligations Law § 5–701(1).

**6.** Although the Maryland courts have not yet addressed the issue, this Court concludes that they would follow the New York courts and hold that the doctrine of promissory estoppel may not be used to circumvent the requirements of the statute of frauds. *See, Kahn v. Cecelia Co.*, 40 F.Supp. 878 (S.D.N.Y.1941); *Annot.*, 56 A.L.R.3d 1037 (1974).

**7.** Defendants also argued that the contract and promissory estoppel causes of action are barred by the statute of limitations contained in § 8111. The Court finds it unnecessary to discuss that argument, however, since it has already determined that those first two causes of action are barred by the statute of frauds.

sonal services performed . . . shall be brought after the expiration of one year from the accruing of the cause of action on which such action is based. 10 *Del.C.* § 8111. Defendants argue that § 8111 is the controlling limitations provision and that that provision bars the fraud and negligent misrepresentation claims because those claims accrued in early April 1975 and plaintiff did not file this action until almost two years thereafter. The Court does not agree that § 8111 is controlling.

Plaintiff's fraud and negligent misrepresentation claims are not really claims for benefits arising from services performed. Rather, they are claims for damages resulting from defendants' intentional or negligent misrepresentations as to plaintiff's right to receive those benefits. Thus, it must be concluded that there is at least significant doubt as to whether those claims are even within the coverage of § 8111.

Moreover, there is another statutory provision which applies to those claims. Section 8106 of Title 10 *Del.C.* provides for a three year statute of limitations for actions "to recover damages caused by an injury unaccompanied with force." 10 *Del.C.* § 8106. That section on its face applies to actions for fraud and negligent misrepresentation. *See, E. M. Fleischmann Lumber Corp. v. Resources Corp. Int'l,* 211 F.2d 204 (C.A.3, 1954). While the defendants may contend that there is some doubt as to which provision is applicable, the Delaware Supreme Court has held that any doubt should be resolved in favor of the longer period. *Sonne v. Sacks,* 314 A.2d 194, 196 (Del.Sup.Ct.1973). Therefore, the Court concludes that the three year period established in § 8106 is controlling and consequently the defendants' motion for summary judgment on the basis of the statute of limitations must be denied with respect to the fourth and fifth causes of action based on fraud and negligent misrepresentation.

8. The Delaware rule holds that the question of whether a parent can be held liable for the debts of its subsidiary is to be determined by the law of Delaware. *See, Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil,* 456 F.Supp. 831, 840 n.17 (D.Del.1978).

*The Nexus Motion*

Nexus contends that summary judgment should be granted in its favor on plaintiff's fraud and negligent misrepresentation claims because plaintiff has not alleged sufficient grounds upon which Nexus could be held liable for the alleged fraud and negligent misrepresentation. Plaintiff admits that Nexus is not directly responsible for the alleged torts. He contends, however, that Liberty was a subsidiary and a mere instrumentality of Nexus and that Nexus may therefore be held liable for the torts of its subsidiary.

The plaintiff correctly observes that the general rule is that a parent corporation may be held liable for the torts of its subsidiary if the parent exercises such dominion and control over the subsidiary that it can only be viewed as a mere instrumentality of the parent. *Pauley Petroleum, Inc. v. Continental Oil Company,* 43 Del.Ch. 366, 231 A.2d 450, 452–53 (1967), *aff'd,* 43. Del.Ch. 516, 239 A.2d 629 (1968).[8] The undisputed facts in this case establish that Nexus did not exercise the type of dominion and control over Liberty that is necessary in order to bring that general rule into play. It is undisputed, for example, that at all relevant times Liberty was an organized, existing and active corporation which owned a number of assets and operated a going business. In addition, it is undisputed that Nexus never paid the salaries or wages of any of Liberty's employees, or the operating expenses or losses of Liberty. Finally, it is undisputed that Liberty did not engage in any material business with Nexus; that Liberty kept separate and independent books and records, and that Liberty held regular corporate meetings including Board of Directors meetings. (*See,* D.I. 83 & 84).[9] In view of these undisputed facts Liberty could not be held to be a mere

9. Plaintiff did not challenge the affidavits that were filed on behalf of the defendants and he did not file any counter–affidavits.

instrumentality of Nexus.[10]  *See, Pauley, supra,* 231 A.2d at 453; *Steven v. Roscoe Turner Aeronautical Corp.,* 324 F.2d 157, 161 (C.A.7, 1963).  Consequently, Nexus cannot be held liable for any torts that were committed by Liberty, and therefore, Nexus' motion for summary judgment must be granted.

**10.**  Plaintiff relies on the fact that Nexus owned at least 56.6% of Liberty's stock at all relevant times and on the fact that the companies had several officers and directors in common. (*See,* D.I. 72 & 84).  Those facts, however, are simply insufficient by themselves to support a finding that a subsidiary is a mere instrumentality.  *See, Pauley, supra,* 231 A.2d at 453; *La Chemise Lacoste v. General Mills, Inc.,* 53

F.R.D. 596, 603 (D.Del.1971);  *Annot.,* 38 A.L. R.3d 1102, 1111.