**Hooter DEERE, Plaintiff,**

v.

**GOODYEAR TIRE AND RUBBER COMPANY, Defendant.**

No. 95–CV–668.

United States District Court,
N.D. New York.

Aug. 22, 1997.

Ernest Abdella, Abdella and Abdella, Gloversville, NY, for plaintiff.

Donald P. Ford, Thuillez, Ford, Gold & Conolly, Albany, NY, Michael L. McAllister, Phoenix, AZ, for defendant.

*MEMORANDUM–DECISION and ORDER*

HURD, United States Magistrate Judge.

## I. INTRODUCTION

On April 21, 1995, the plaintiff, Hooter Deere ("Deere"), filed a personal injury action in the Supreme Court of the State of New York for the County of Fulton. Deere alleged that he was injured when a tire manufactured by the defendant, Goodyear Tire & Rubber Company ("Goodyear"), exploded during inflation. Subsequently, on May 17, 1995, Goodyear removed the action to the United States District Court for the Northern District of New York.

Goodyear now moves for Summary Judgment pursuant to Fed.R.Civ.P. 56, dismissing plaintiff's products liability claims for design defect and failure to warn. In addition, Goodyear makes a motion in limine excluding plaintiff's expert, H.R. Baumgardner ("Baumgardner") from testifying at trial. In support of its motions, Goodyear has submitted a memorandum of law; an attorney's affidavit; and a statement of undisputed facts pursuant to Local Rule 7.1(f). Plaintiff opposes Goodyear's motions and additionally moves to amend the complaint, adding punitive damages. In opposition to Goodyear's motions and in support of their cross motion, plaintiff has submitted memorandums of law, an attorney's affidavit, and a statement of undisputed facts pursuant to Local Rule 7.1(f). Oral argument was heard on July 31, 1997, in Albany, New York. Decision was reserved.

## II. FACTS

The plaintiff, a resident of Fort Plain, New York, was raised on the family farm and received his high school diploma from Schoharie Central School. In addition to the instruction received upon the farm, as a student at Schoharie Central School, Deere's occupational/educational courses reviewed the methods of inflating and replacing tires. These specific courses were metal trade, electrical trade, and tractor and machinery maintenance. At the age of eighteen, Deere left the family farm and thereafter worked various jobs involving machinery mainte-nance. These jobs all specifically involved the replacement and maintenance of tires.

In 1994, Deere began working for Ephrata Safety Systems ("Ephrata"). Employed as a mechanic, his duties included maintaining and replacing the tires on the machinery and equipment. Among the machinery was a dump truck employing a dual assembly tire system. A dual assembly tire system consists of two tires positioned side by side that run in unison. On September 30, 1994, Deere prepared to change the inside tire from the dual assembly on Ephrata's dump truck. Without making an inquiry as to whether the tire had been run flat, Deere determined that the tire was still good after a visual and physical inspection. However, as Deere proceeded to inflate the tire, the tire exploded from what is known as a "zipper rupture phenomenon," sending Deere across the floor eight to ten feet away from the exploded tire. As a result of the explosion, Deere alleges that he was injured internally and externally, and disabled from his duties with Ephrata.

The tire that Deere attempted to inflate and reinstall on his employer's truck was manufactured by Goodyear in January 1988. Again, in 1994, the tire was retreaded by Goodyear and sent to be used by Deere's employer, Ephrata. As a result, Deere maintains that Goodyear is liable under theories of products liability and negligence. In particular, Deere contends that Goodyear is strictly liable because the zipper rupture was caused by a defective design, and Goodyear failed to warn that re-inflation following a run flat situation may lead to serious bodily injury. Also, Deere claims that Goodyear was negligent for retreading the tire and sending it to the plaintiff's employer for use on their dump truck.

## III. DISCUSSION

### 1. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of

law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. at 1356. At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56: *Liberty Lobby Inc.*, 477 U.S. at 250, 106 S.Ct. at 2511; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. at 1356. To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–249, 106 S.Ct. at 2510–11; *Matsushita Elec, Indus. Co.*, 475 U.S. at 587, 106 S.Ct. at 1356. Thus, summary judgment is proper where there is "little or no evidence ... in support of the non-moving party's case." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–1224 (2d Cir.1994) (citations omitted).

### 2. *Design Defect*

■ In New York, a manufacturer of a defective product is strictly liable if: (1) the product is defective because it was not reasonably safe as marketed; (2) the product was used in a way that it was intended to be used; (3) the defect was a substantial factor in causing the injuries; (4) the exercise of

reasonable care would not have exposed the defect or prevented the danger; and (5) the exercise of ordinary care would not have avoided the injury. *Fane v. Zimmer Inc.*, 927 F.2d 124, 128 (2d Cir.1991) (citing *Wolfgruber v. Upjohn Co.*, 72 A.D.2d 59, 62, 423 N.Y.S.2d 95 (4th Dep't 1979), *aff'd*, 52 N.Y.2d 768, 436 N.Y.S.2d 614, 417 N.E.2d 1002 (1980)). However, "[t]he plaintiff ... is under an obligation to present evidence that the product, as designed, was not reasonably safe because there was a substantial likelihood of harm and it was feasible to design the product in a safer manner." *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 108, 463 N.Y.S.2d 398, 450 N.E.2d 204 (1983).

■ Although the plaintiff alleges that the zipper rupture was the result of a design defect, he fails to offer any evidence to support this claim. In fact, the evidence in the record supports Goodyear's position that the zipper rupture phenomenon is not a design defect but rather a product of use and abuse. Specifically, Goodyear maintains that a zipper rupture is caused when a tire existing on a dual assembly is run flat and then re-inflated. Defendant's expert reported that an under inflated tire located in the dual position has a smaller circumference than its fully inflated companion, and any excessive running during this condition causes damage to the steel in the tire's sidewall and can lead to metal fatigue and failure upon re-inflation. This position is also consistent with the opinion of Baumgardner, plaintiff's expert. He suggested during deposition that a zipper rupture is a function of both under-inflation, speed, and mileage.[1] Despite these facts, Baumgardner continues to insist that all tires that suffer a zipper rupture are defectively designed.

Absent from the plaintiff's evidence are any alternative designs that would eliminate the zipper rupture phenomenon. Although Baumgardner testified that he had ideas that would reduce the zipper rupture phenomenon, nothing in the record indicates that these ideas would eliminate the problem. Baumgardner agreed that at best the zipper

---

1. Baumgardner acknowledged that published literature in the tire industry, OSHA, and the Rubber Manufacturers Association, support the opinion that a zipper rupture is the result of tire abuse.

rupture phenomenon could be slowed down by altering the sidewall by providing a wider flexing area. However, he was not able to estimate the length of time such alterations would extend the occurrence of a zipper rupture. Essentially, it is a matter of speculation whether his proposed ideas would have caused enough of a delay in the occurrence of a zipper rupture to have avoided Deere's accident.

Assuming that Baumgardner's proposed ideas would have delayed the zipper rupture by an amount of time necessary to avoid Deere's accident, the fact remains that Baumgardner's ideas are still undeveloped. In particular, he stated that his idea could be developed and created by tire engineers. Nevertheless, his idea remains only an undeveloped idea which has not been the subject of any scholarly articles or peer review. Also, Baumgardner was not cognizant of the effects his ideas may have on the feasibility of the tire involving cost, handling, and performance. Finally, Baumgardner's acknowledgment of the fact he knew of no other alternative designs or proposed plans in the industry that would prevent a zipper rupture following a tire mounted on a dual assembly that has been run flat, casts speculation on whether the zipper rupture phenomenon can be eliminated altogether under such circumstances.[2]

The plaintiff has failed to meet his obligation of providing sufficient evidence that the tire, as designed, was not reasonably safe and that it was feasible to design the product in a safer manner. *See Voss,* 59 N.Y.2d at 108, 463 N.Y.S.2d 398, 450 N.E.2d 204. Consequently, Goodyear's motion to dismiss plaintiff's products liability claim for a defective design must be granted.

### 3. *Failure to Warn*

■ Under New York Law, a plaintiff may recover in strict products liability for the manufacturer's failure to warn of the risks and dangers associated with the use of its product. *Urena v. Biro Mfg. Co.,* 114

F.3d 359, 365 (2d Cir.1997); *Rastelli v. Goodyear Tire & Rubber Co.,* 79 N.Y.2d 289, 296, 582 N.Y.S.2d 373, 591 N.E.2d 222 (1992); *Polimeni v. Minolta Corp.,* 227 A.D.2d 64, 66, 653 N.Y.S.2d 429 (3d Dep't 1997); *Bukowski v. CooperVision Inc.,* 185 A.D.2d 31, 33, 592 N.Y.S.2d 807 (3d Dep't 1993). The manufacturer's duty to warn involves warning of latent dangers resulting from the foreseeable use of its product of which they knew or should have known. *Rastelli,* 79 N.Y.2d at 297, 582 N.Y.S.2d 373, 591 N.E.2d 222; *Bukowski,* 185 A.D.2d at 33, 592 N.Y.S.2d 807. A manufacturer's duty to warn may be breached upon the use of inadequate warnings or even the complete lack of warnings regarding a particular hazard. *Johnson v. Johnson Chemical Co.,* 183 A.D.2d 64, 69, 588 N.Y.S.2d 607 (2d Dep't 1992). Questions involving the adequacy of warnings, or the lack thereof, are generally questions of fact not susceptible to the drastic remedy of summary judgment. *Id.* (citing *Oliver v. NAMCO Controls,* 161 A.D.2d 1188, 1189, 556 N.Y.S.2d 430 (4th Dep't 1990)).

■ Goodyear maintains two arguments in support of its position that plaintiff's claim for a failure to warn should be dismissed. First, it contends that plaintiff has failed to offer any evidence that a warning embossed upon the sidewall of the tire would have prevented the plaintiff's accident. Goodyear cites Baumgardner's opinion that warnings placed upon the sidewall of tires are rarely read and often ignored. Second, it argues that the plaintiff was knowledgeable about the replacement of tires, and therefore understood the risk of inflating a run flat tire that was mounted upon a dual assembly.

It is undisputed that Baumgardner discounted the effectiveness of warnings placed upon the sidewall of tires. During deposition, Baumgardner agreed that virtually every tire mounter that he had observed failed to read the warnings embossed upon the sidewall of tires. However, during the same deposition, he also stated that warnings have a chance of helping and are better than

---

**2.** Although plaintiff's expert indicated that Goodyear was unique with respect to the zipper rupture phenomenon, he was, in fact, critical of the design specifications of all manufactures who experienced a zipper rupture with their tires. Also, he admitted that he has not found any feasible alternative designs that currently exist within the marketplace.

nothing at all. In fact, in an affidavit, he later opined that prominently marked warnings could be very effective. Contrary to the assertions of Goodyear, there is sufficient evidence to create a question of fact regarding whether Deere would have read, and heeded, a warning placed upon the sidewall of the tire, indicating that inflation of a run flat tire could be hazardous.

Finally, Goodyear maintains that Deere was fully aware of the risks associated with the inflation of a tire that had been used in a dual assembly system. In fact, Deere agreed that if the sidewall was *noticeably* weak, inflation might cause an explosion at the area where the tire was chaffed. However, Goodyear's argument is misplaced. The risk that Deere faced was the possibility that without any *noticeable* signs of damage to the sidewall, a run flat tire previously mounted upon a dual assembly would explode from a zipper rupture. It was Baumgardner's opinion that tires run flat upon a dual assembly had the propensity to create undetectable cable failures, and that Deere's experience and training would not have made it apparent that the tire should not have been re-inflated. Thus, Goodyear has not sufficiently demonstrated, as a matter of law, that the risk was obvious.

The determination that Goodyear has failed to adequately establish that the risk was obvious, yields an additional question of fact. The question of fact is whether a warning would have alerted Deere to the fact that a risk of a zipper rupture remained even where a tire did not manifest any sidewall deterioration. Of course, if a jury finds that Deere would not have read the warning in the first place, this question will be irrelevant. Nevertheless, it remains a question of fact, preventing the granting of Goodyear's motion to dismiss, for the alleged failure to warn.

Consequently, questions regarding whether Deere would have read a warning embossed upon the sidewall of the tire, and whether this warning would have alerted

Deere about the risk which was not obvious, are suitable for the jury's determination. Accordingly, Goodyear's motion to dismiss plaintiff's strict products liability claim for failure to warn must be denied.

### 4. *Expert Testimony* [3]

Goodyear contends that Baumgardner's opinions are not reliable. They maintain that Baumgardner does not understand the basic physics, engineering, chemistry, and mathematics associated with the development and manufacture of steel belted radial tires. In addition, they claim that his report consists of opinions that are based upon unsubstantiated speculation. As a result, Goodyear moves to exclude Baumgardner's testimony and opinions at trial.

Under the Federal Rules of Evidence, "a witness qualified as an expert by knowledge, skill, experience, training, or education" may give opinion testimony relating to "scientific, technical, or other specialized knowledge" if it will assist the jury in their understanding of the evidence or a determination of a fact in issue. Fed.R.Evid. 702. "Liberality and flexibility in evaluating qualifications should be the rule ... the expert should not be required to satisfy an overly narrow test of his own qualifications." *Lappe v. American Honda Motor Co.*, 857 F.Supp. 222, 226 (N.D.N.Y.1994), *aff'd*, 101 F.3d 682 (2d Cir.1996). Once qualified as an expert witness, the court's role resembles that of a "gatekeeper," ensuring that any scientific testimony admitted is relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589, 597, 113 S.Ct. 2786, 2794–95, 2798–99, 125 L.Ed.2d 469 (1993). However, this role must also take into consideration the liberal thrust of the Federal Rules of Evidence and the "presumption of admissibility." *Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1869, 134 L.Ed.2d 966 (1996).

In determining whether a qualified expert's testimony is relevant and reli-

---

**3.** Following the dismissal of the claim for defective design, Goodyear's motion in limine, excluding Baumgardner's testimony pertaining to the defective design claim, is moot. Accordingly, the Court will review Goodyear's motion in limine only with respect to the claim for a failure to warn.

able the court must assess whether the reasoning or methodology underlying the testimony is scientifically valid and can properly be applied to the facts at issue. *Becker v. National Health Products, Inc.,* 896 F.Supp. 100, 103 (N.D.N.Y.1995) (citing *Daubert,* 509 U.S. at 593, 113 S.Ct. at 2796–97). The court may consider such factors as the ability to be tested, peer review and publication, potential rate of error, and the general acceptance in the scientific community. *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1042 (2d Cir.1995) (citing *Daubert,* 509 U.S. at 593–94, 113 S.Ct. at 2796–97).[4] Ultimately, the trial court is possessed with broad discretion in admitting expert testimony. *McCullock,* 61 F.3d at 1042.

■■■ The plaintiff's expert has approximately forty-two years of experience as a tire engineer. Beginning in 1955, Baumgardner became a manager as a tire engineer with Firestone Tire & Rubber Company ("Firestone"). As part of his employment, Baumgardner was trained at Firestone's own college. Since leaving Firestone in 1982, Baumgardner has given speeches, taught, and/or presented papers to the Clemson University Tire Industry, Society of Automotive Engineers, Akron Rubber Company, and the University of Northern Florida. In addition, he has authored over two hundred articles in different trade magazines involving various issues concerning the tire industry. Therefore, Baumgardner is an appropriate expert witness because his practical experience qualifies as specialized knowledge gained through training and experience in the tire industry. *See McCullock,* 61 F.3d at 1043.

At trial, it is expected that Baumgardner will offer an opinion regarding the effectiveness of warnings placed upon the sidewall of tires. In particular, the court anticipates that he will opine that a prominently or uniquely marked warning embossed upon the sidewall of the tire would have prevented the accident. This opinion is based upon Baumgardner's experience and training in the tire industry. In fact, Baumgardner specifically stated that since 1955, he has had the opportunity to personally observe hundreds of tire mounters in the process of replacing tires. As a matter of law, Baumgardner is qualified to offer his opinion regarding these issues.[5]

Goodyear's assertions that Baumgardner lacks experience and is unfamiliar with the scientific principles of sidewall design and construction, are proper areas of scrutiny on cross-examination. These areas go to the weight and credibility of the testimony rather than the admissibility. *See Id.*

Accordingly, Goodyear's motion to exclude Baumgardner's opinions regarding the issue of a failure to warn will be denied.[6]

### 5. *Amending the Complaint*

The rules governing amendment of pleadings after the deadline established in a pretrial scheduling order are set forth in rules 15 and 16 of the Federal Rules of Civil Procedure. In an effort to expedite the disposition of pending actions, Rule 16 provides for pretrial conferences, scheduling, and management. Rule 16(b) specifically sets

---

4. These factors are not dispositive. In fact, it is not necessarily appropriate to invoke the *Daubert* factors when the expert's testimony is based upon experience or training. *Liriano v. Hobart Corp.,* 949 F.Supp. 171, 177 (S.D.N.Y.1996). Such an opinion "cannot always be evaluated on the basis of 'rate of error', 'peer review' or 'general acceptance' in the relevant scientific community." *Id.; See Compton v. Subaru of America Inc.,* 82 F.3d 1513, 1519 (10th Cir.1996) (*Daubert* is applicable only when an expert relies on some principle or method), *cert. denied,* — U.S. —, 117 S.Ct. 611, 136 L.Ed.2d 536 (1996).

5. In support of the motion to exclude, Goodyear cites *Mitchell v. Uniroyal Goodrich Tire Co.,* 666 So.2d 727 (La.App.1995); *Diviero v. Uniroyal Goodrich Tire Co.,* 919 F.Supp. 1353 (D.Ariz.

1996), *aff'd,* 114 F.3d 851 (9th Cir.1997); *Carmichael v. Samyang Tires, Inc.,* 923 F.Supp. 1514 (S.D.Ala.1996); and *Clement v. Griffin,* 634 So.2d 412 (La.App.1994). These cases involve manufacturing or design defects pertaining to the chemical components of tires or the process by which tread binds to the tire. While possibly relevant for a design defect claim, these cases do not support Goodyear's argument that Baumgardner should be precluded from offering his opinion on the issue of the alleged failure to warn.

6. Both parties have requested a hearing pursuant to 104(a) of the Federal Rules of Evidence. However, this request is denied without prejudice.

forth that a District Court "shall ... enter a scheduling order that limits the time (1) to join other parties and to amend the pleadings...." Fed.R.Civ.P 16(b). The rule further provides that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge, or, when authorized by local rule, by a magistrate judge." Fed.R.Civ.P. 16(b). Generally, a party is free to amend the pleadings as a matter of course prior to the service of the responsive pleading or at any time within twenty days after it is served. Fed.R.Civ.P. 15. "Otherwise, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed.R.Civ.P. 15.

■ When Rule 16 and Rule 15 come into conflict, however, "Rule 16 must be read in light of Rule 15." *Usery v. Marquette Cement Mfg. Co.*, 568 F.2d 902, 909 (2d Cir. 1977) (citing 3 Moore's Federal Practice ¶ 15.13[1] (2d ed.1974)). In deciding which rule to apply, " 'the court must ... balance the need for doing justice on the merits between the parties (in spite of the errors and oversights of their attorneys) against the need for maintaining orderly and efficient procedural arrangements.' " *Id.* (citing Moore, *supra*, at ¶ 16.20)

■ Historically, Rule 15 has been applied extremely liberally. The underlying premise behind the liberal construction of the Rule 15 is to afford a plaintiff "an opportunity to test his claims on the merits" rather than lose on a procedural imperfection. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). The Supreme Court has found that:

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require be "freely given".

*Id.; Union Bank of India v. Seven Seas Imports, Inc.*, 727 F.Supp. 125, 133 (S.D.N.Y.

1989) ("[a] motion to amend should be denied only for reasons such as undue delay, bad faith, futility of the amendment, or prejudice to the opposing party"). "Although the decision of whether to allow plaintiffs to amend their complaint is left to the sound discretion of the district court, there must be good reason to deny the motion." *Acito v. IMC-ERA Group, Inc.*, 47 F.3d 47, 55 (2d. Cir. 1995) (citing *S.S. Silberblatt, Inc. v. East Harlem Pilot Block—Bldg 1 Housing Dev. Fund Co., Inc.*, 608 F.2d 28, 42 (2d Cir. 1979)); *John Hancock Mut. Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458 (2d Cir. 1994).

■ Generally, while a delay in making a motion to amend the pleadings must be weighed as a factor in deciding whether or not to grant the motion, the delay by itself will not be reason to deny the motion. *U.S. v. Continental Ill. Nat., Bank and Trust*, 889 F.2d 1248, 1254 (2d Cir.1989). For example, the Second Circuit has found that a three year delay from filing the initial complaint was an inadequate basis for denying a motion to amend a complaint when there was no showing of bad faith on the part of the plaintiff or prejudice to the defendant. *Middle Atlantic Utils. Co. v. S.M.W. Dev. Corp.*, 392 F.2d 380 (2d Cir.1968).

■ However, the Second Circuit has noted that "[a]lthough the grant or denial of leave to amend is within the discretion of the district court, a decision 'without any justifying reason' may be an 'abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Evans v. Syracuse City School Dist.*, 704 F.2d 44, 46 (2d Cir.1983) (quoting *Foman*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222). In instances "where ... 'a considerable amount of time has passed between filing the complaint and the motion to amend, courts have placed the burden upon the movant to show some 'valid reason for his [or her] neglect and delay.' " *Sanders v. Thrall Car Mfg. Co.*, 582 F.Supp. 945 (S.D.N.Y.1983): *aff'd*, 730 F.2d 910 (1984) (citing Hayes v. New England Millwork Distribs., Inc., 602 F.2d 15, 19–20 (1st Cir.1979) (quoting *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469 (5th Cir.1967));

*Greenberg v. Mynczywor,* 667 F.Supp. 901, 905 (D.N.H.1987) (if considerable delay has occurred, the burden shifts to the movant to show a valid reason for the Court to excuse the delay). "'[The court] must weigh good cause shown for the delay in moving *vis a vis* dilatoriness of counsel resulting in last minute surprise and inability of opposing counsel to meet the tendered issue.'" *Evans,* 704 F.2d at 47 (quoting *Nevels v. Ford Motor Co.,* 439 F.2d 251, 257 (5th Cir.1971). Further, in addressing prejudice to the nonmoving party, the Second Circuit noted that "'[t]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.'" *Evans,* 704 F.2d at 47 (quoting *Advocat v. Nexus Indust., Inc.,* 497 F.Supp. 328, 331 (D.Del.1980)). Finally, although leave to amend is to be freely given, denial of a motion to amend is appropriate when the sole reason for the undue delay is ignorance of the law. *Goss v. Revlon, Inc.,* 548 F.2d 405, 407 (2d Cir.1976) (citations omitted).

### A. *Punitive Damages*

■■■■ Plaintiff seeks punitive damages and thus requests permission to amend the complaint. However, the motion to amend is more than two years after the filing of the original complaint and more than a year and a half after the deadline delineated in the scheduling order. Plaintiff does not offer any explanation for the delay, only that the New York Court of Appeals recognizes an injured party's right to punitive damages where there is evidence that the defendant's actions in failing to warn were wanton or made with a conscious disregard of the rights of others. However, if a lengthy delay exists before a motion to amend is made, it is incumbent upon the movant to offer a valid explanation for the delay. *Evans,* 704 F.2d at 47; *Greenberg,* 667 F.Supp. at 905. Plaintiffs have failed to meet this burden.

■■■■ Additionally, the motion to amend the complaint to add punitive damages is futile. In New York, courts demand that the plaintiff demonstrate that the defendant's conduct was "'so reckless or wantonly negligent as to be the equivalent of a conscious disregard of the rights of others and that the

conduct demonstrates a high degree of moral culpability.'" *West v. Goodyear Tire & Rubber Co.,* 973 F.Supp. 385, 387 (S.D.N.Y.1997) (quoting *Rinaldo v. Mashayekhi,* 185 A.D.2d 435, 585 N.Y.S.2d 615 (3d Dep't 1992)). Furthermore, the reckless and wanton behavior meriting an award of punitive damages must be "clearly established." *Id.*

The plaintiff maintains that Goodyear failed to inform the ultimate user of the risk associated with the inflation of a run flat tire mounted upon a dual assembly. They insist that Goodyear's refusal to share this information with the public was wanton and egregious. Nevertheless, plaintiff has not come forward with sufficient evidence clearly establishing that Goodyear acted wantonly or in a conscious disregard for the rights of others.

Accordingly, the plaintiff's cross-motion amending the complaint to add a claim for punitive damages will be denied.

### IV. *CONCLUSION*

Therefore, it is

ORDERED that

1. Goodyear's motion to dismiss plaintiff's claim for a design defect is GRANTED;

2. Goodyear's motion to dismiss plaintiff's claim for failure to warn is DENIED;

3. Goodyear's motion in limine excluding Baumgardner from testifying at trial is DENIED; and

4. The plaintiff's cross-motion to amend the complaint adding punitive damages is DENIED.

IT IS SO ORDERED.