55 N.Y.2d 966 (1982)
Bruce Green, an Infant, by His Mother and Natural Guardian, Fannie Green, et al., Appellants,
v.
New York City Housing Authority, Defendant-Respondent and Third-Party Plaintiff-Respondent. Metaloc Corp., Third-Party Defendant-Respondent.
Court of Appeals of the State of New York.
Argued January 14, 1982.
Decided February 16, 1982.
Anthony Gentile, Lewis I. Wolf and Philip M. Damashek for appellants.
William F. Larkin for defendant-respondent.
Thomas F. Dunn for third-party defendant-respondent.
Concur: Judges JASEN, GABRIELLI, JONES and WACHTLER. Judge FUCHSBERG dissents and votes to reverse in an opinion in which Chief Judge COOKE and Judge MEYER concur.
Order affirmed, with costs, for reasons stated in the memorandum at the Appellate Division (82 AD2d 780).
FUCHSBERG, J. (dissenting).
The extraordinary process of legal thought by which it is possible to say that the plaintiffs failed to make out a cause of action is difficult to discern.
The prima facie proof, almost entirely undisputed, tells its own tale. Plaintiff mother and her four young children, of whom the then one- and a half-year-old infant plaintiff was the youngest, dwelled in a tenement rented from the defendant New York City Housing Authority. When this family moved into the apartment, it found that defective hinges had caused an eight-foot high bedroom door to become loose and, after the passage of some time, to fall from the doorway altogether. Upon the mother observing its precarious state, she promptly called upon the defendant to meet its duty to safely rehang the door (Multiple Dwelling Law, § 78). Between her initial report of the condition and the day it first came completely loose, she repeated her request about nine times. The defendant nevertheless, having failed to respond to these entreaties, over an additional period of 17 months, on at least 10 more occasions she reminded the rental and district office of the housing authority of the unremedied condition of this now loose-lying, large and cumbersome door. But to no avail.
Instead of making the simple repair that would have removed the potential danger flowing from the obstruction of this small and crowded apartment thus visited on the occupants, the defendant's representative did no more than *969 to specifically direct the mother, presumably while she was to wait for the authority to get around to setting the door back in place, to put it "under the bed or behind, stand it beside the wall [the alternative she was following at the time of the accident] or behind the bed". Moreover, when, finding that none of these kept the door from being a hard-to-avoid encumbrance, she threatened to have it thrown out of the apartment, the defendant's supervisor advised her that, if she did so, she would be held responsible. All this led, straight as an arrow, to the day when the leaning door having toppled onto the toddling infant while he was at play in his home, he landed in a hospital with a damaged brain.
Consequently, whether it was foreseeable, under all the circumstances, that the defendant's conduct could bring injury to a child was all but a classical question of fact (see Derdiarian v Felix Contr. Corp., 51 N.Y.2d 308, 315; Parvi v City of Kingston, 41 N.Y.2d 553, 560; Restatement, Torts 2d, §§ 443, 449). It follows that the Trial Judge was eminently correct in submitting it to the jury. In addition to answering it implicitly in the affirmative by its verdict for the plaintiffs,[1] that body, in response to a special interrogatory posed at the behest of the defendant itself, expressly found foreseeability.
This should have been decisive. For the issue came well within the jurisprudential thrust of our democratic societal credo that questions of this nature, which so often abound in the "reasonable man" world of tort litigation, are best decided by a lay jury (see Havas v Victory Paper Stock Co., 49 N.Y.2d 381, 388; Pound, Introduction to the Philosophy of Law [rev ed], p 71; Fleming, Torts [3d ed], p 271; Weiner, Civil Jury Trial and the Law-Fact Distinction, 54 Cal L Rev 1867, 1887-1897).
It follows that the Appellate Division's reliance on our decision in Martinez v Lazaroff (48 N.Y.2d 819) was not pertinent. There, after lack of repair of a tenement house boiler had caused it to stop operating, the plaintiff sought to recover for injuries sustained in an accident that occurred *970 during the course of the tenant's utilization of his own alternative method of producing hot water. Accordingly, the majority in Martinez was able to take the position, first, that the injuries emanated from a completely independent intervening source and, second, that only a lack of water, not personal injury, could have been foreseen from the boiler's shutdown. Whatever the merits of these arguments (but see Martinez v Lazaroff, supra, at p 820 et seq. [MEYER, J., dissenting]), the present plaintiffs' case rests on neither such contention. Here, we at all times are dealing with the same object, the unhung door, and, so far as foreseeability of consequences is concerned, that the child might be injured would have been an unsurprising result of the toppling whether it happened at the point in time when the door was still hanging loose in the doorway or later when, as defendant had directed, it remained unbraced in its leaning position against the wall.[2]
For all these reasons, the order of the Appellate Division should be reversed and the case remitted for consideration of the facts.
Order affirmed, etc.
NOTES
[1] There were two plaintiffs, one the child for personal injuries, the other the mother for special damages and loss of services.
[2] The only other case on which the Appellate Division relied, Rivera v City of New York (11 N.Y.2d 856) is, on its "Rube Goldberg" facts, no more in point. In Rivera, a bathtub would tend to fill with hot water because of a plumbing defect. But the water was no more than the medium into which the plaintiff there was plunged by his own disparate act. The intervention  standing on the curved edge of the bathtub while wearing wet boots in the dark at 11:30 P.M. in order to reach for a ceiling light cord  bears no relationship to the simple, direct and continuing neglect of the door in the case before us now.