■ DANIEL DAUGHTERY et al., Appellants, v CITY OF NEW YORK, Respondent. (And Third-, Fourth-, and Fifth-Party Actions.)—Judgment of the Supreme Court, Bronx County (Jack Turret, J.), entered December 11, 1986, which dismissed plaintiffs' complaint at the close of their case on the ground that plaintiffs had failed to prove a prima facie case, is unanimously modified on the law and the facts to the extent of reinstating the complaint as to the infant plaintiff only, remanding the matter for trial and otherwise affirmed, without costs or disbursements.

This is a personal injury case arising out of an incident which occurred on December 9, 1983 when the infant plaintiff, Daniel Daughtery, then 4½ years old, allegedly climbed up to the bathroom sink in his family's apartment in order to fill his toy water pistol. He first turned on the cold water faucet but since no water came out, he attempted to turn on the hot water faucet. However, the knob came off in the child's hand, and he was sprayed with excessively hot water, causing severe burns on parts of his body. At the time of the accident, Daniel

was living with his mother, Patricia Souvenier, his adult sister, Stephanie Moore, and his brother in a city-owned building at 2386 Morris Avenue in Bronx County.

The matter eventually went to trial before a jury, with plaintiffs demanding judgment both for the infant and on his mother's derivative claim. Following a voir dire by the court, Daniel testified to the forementioned occurrence, also stating that his sister Stephanie pulled him out of the bathroom; his mother wrapped him in a cover and took him to a hospital. According to Stephanie Moore, she heard screams and found her brother in the bathroom in front of the sink, crying. The handle of the hot water faucet had come off, and water was shooting all over. The water was so hot that the bathroom was steaming. She thereupon pulled Daniel away and turned the water off under the sink. Their mother entered, and they took Daniel into the bedroom and removed his clothes. Patricia Souvenier then wrapped Daniel in a blanket and brought him to the hospital.

Dr. Dennis Barek, an expert plastic surgeon who examined Daniel, asserted that the second degree burns and permanent scarring on the infant plaintiff must have been produced by water whose temperature was in the range of 176 degrees Fahrenheit. A photograph of the bathroom was placed in evidence. There are separate hot and cold water faucets with one spout, and brown stains were evident in the sink underneath the hot water faucet. Stephanie Moore claimed that beginning in April of 1983, the hot water supplied to the apartment was so hot that "you could make coffee with it." It was necessary to first turn on the cold water and then mix in the hot water. Moreover, the hot water faucet in the bathroom would always leak and fall off. Stephanie Moore did admit, however, that she never complained of this situation, either to defendant City of New York or to the 2386 Morris Avenue Tenants Association, the third-party defendant. At the time in question, the Tenants Association had leased the entire premises pursuant to the City of New York's interim lease program, which was designed to facilitate the transfer of city-owned buildings to tenants.

Plaintiff read into evidence portions of an examination before trial of the owner of the fourth-party defendant, Quality Plumbing and Heating, which had been retained by the city prior to the leasing of the building to do substantial work on the plumbing system. Quality Plumbing and Heating had replaced most of the pipes in the building, as well as the purportedly defective faucet. The faucet in plaintiffs' apart-

ment had two knobs with a bonnet underneath. If the knob were taken off, water would not spurt out unless the bonnet was also removed. Although the water faucet could operate without the bonnet, there would be considerable leakage. Another of plaintiffs' witnesses, the Director of the Bureau of Technical Services for the Provision of Maintenance and Technical Support of the Housing Preservation Department, also testified regarding the physical characteristics of the plumbing system. In addition, a heating system audit report, prepared by the city and dated March 9, 1982, which was introduced into evidence, indicated that the domestic water was reported hot at the tap and that the aquastat, a safety device used to shut off the boiler when the temperature becomes too hot, was not connected. It should also be noted that while the lease between the City of New York and the Tenants Association provided that the tenants would be responsible for maintaining the building, the Department of Housing Preservation and Development "shall, when practicable and subject to availability of funds, let out contracts for rehabilitation, renovation or construction work to the Building upon notification to and coordination with Lessee."

The adult plaintiff, Patricia Souvenier, did not appear at the trial, and plaintiffs informed the court that she could not be located. Thus, at the close of their case, plaintiffs sought to read into evidence portions of her examination before trial wherein she claimed to have given notice of the defective condition to defendant City of New York. A witness for plaintiffs, Sheila Parker, testified that she was a friend of Patricia Souvenier and that approximately one month prior to the commencement of the trial, the Bureau of Child Welfare had brought Daniel to her because his mother had left the child in a shelter and then disappeared. Daniel had been residing with her since that time. Plaintiffs' counsel was sworn and explained that his office had been unable to find Patricia Souvenier. He had last been in contact with her about a month before the trial started when she was living at the Roberto Clemente Shelter. She was advised to call her lawyer's office every few days. When she failed to check in, his office telephoned the shelter and was told that she no longer resided there and had not left a forwarding address. However, no investigator had been assigned to locate her, nor did counsel endeavor to contact the attorney who represented Patricia Souvenier in ongoing Family Court proceedings.

The city strongly opposed the motion to have the deposition of the adult plaintiff read into evidence, stating that it in-

tended upon cross-examination to demonstrate that Daniel's injuries were the result of deliberate abuse on the part of his mother and that numerous Family Court proceedings had been instituted against her for child abuse. The court then denied plaintiffs' motion on the ground that she was a party to the action and should not be permitted to benefit from her own unavailability. The court noted that plaintiffs had not requested an adjournment to locate Souvenier but had waited until the conclusion of its presentation to move for admission of her examination before trial. Defendant thereafter moved to dismiss the complaint for failure to make out a prima facie case, arguing that the city had not received notice of the excessively hot water or the defective faucet and that, further, since it had leased the premises to the Tenants Association, it could not be liable for the condition of the building. In granting the motion, the court held that the proximate cause of the accident was a defective faucet, and the record was devoid of any proof of the proximate cause with respect to negligence by the city. Plaintiffs have appealed.

The standard which must be applied to determine if a prima facie case has been made out is "whether there was any rational basis on which a jury could have found for plaintiffs, the plaintiffs being entitled to every favorable inference which could reasonably be drawn from the evidence submitted by them" *(Rhabb v New York City Hous. Auth.,* 41 NY2d 200, 202). In the instant matter, there was evidence that the water in the building had been excessively hot for many months prior to the incident herein, that the boiler and pipes were in substantial disrepair and that extensive work had been performed on the plumbing system at the behest of defendant city. There was, therefore, sufficient proof for a jury to conclude that because the situation existed for such a long time that knowledge of it should have been acquired with the exercise of reasonable care, the city possessed constructive notice of a defective condition which was a proximate cause of the accident *(see, Batton v Elghanayan,* 43 NY2d 898). Moreover, section 78 of the Multiple Dwelling Law imposes a duty upon the owner of a multiple dwelling to maintain the premises in a safe condition, a responsibility which was not negated by the lease arrangement with the Tenants Association. As the Court of Appeals declared in *Worth Distribs. v Latham* (59 NY2d 231, 238), "[a]lthough an owner will not be held liable under section 78 where it has completely parted with possession and control of the building, the owners here reserved the right under the terms of the net lease to enter for inspection

and repairs. This reservation constituted a sufficient retention of control to subject the owners to liability". The lease involved in the present situation clearly indicates that while the Tenants Association would assume management of the building, the city retains ultimate control, particularly with regard to rehabilitation, renovation or construction work.

It is defendant's position that, at any rate, the proximate cause of the infant plaintiff's injuries was the defective faucet, not the hot water since the hot water did not create the flaw in the faucet. Rather, the city urges, the defective faucet was an independent, intervening event which was solely responsible for any harm done to Daniel. Yet, in contrast to the situation existing in the cases cited by defendant in support of their argument *(Green v New York City Hous. Auth.,* 82 AD2d 780, *affd* 55 NY2d 966; *Rivera v City of New York,* 11 NY2d 856)*, it cannot be said here that the intervening event, the breaking of the faucet handle, was not foreseeable. Certainly, the faucet was being used for the purpose for which it was intended—to procure water. If the water had not been excessively hot, the plaintiff would not have been injured. At the very least, the excessive temperature of the water was a concurrent cause for which a jury could reasonably find liability. Finally, the city contends that the infant plaintiff's injuries were the result of abuse by his mother rather than the accident in the bathroom. Whether Daniel was hurt by the spraying hot water or because of child abuse is also ultimately a question of fact for the jury to decide. Clearly, plaintiffs made a prima facie showing warranting submission to the jury that Daniel's severe burns were incurred in the accident.

The adult plaintiff's cause of action for loss of services was properly dismissed since she was well aware that the matter would shortly be brought to trial and apparently voluntarily absented herself from the proceedings. In addition, there are no exceptional circumstances present herein which would justify the introduction of Souvenier's deposition testimony *(see,* CPLR 3117 [a]). The efforts employed to obtain her attendance at trial were by no means diligent as required by statute, and her unavailability would have deprived the city of an opportunity to examine her concerning her purported abuse of Daniel. Thus, it would be unduly prejudicial to defendant to permit plaintiffs to establish their case with the assistance of Souvenier's deposition. Concur—Sandler, J. P., Carro, Milonas, Rosenberger and Smith, JJ.