ANNIE JOHNSON et al., Respondents, v JOHNSON CHEMICAL CO., INC., et al., Appellants.

Second Department, October 13, 1992

### APPEARANCES OF COUNSEL

*Bower & Gardner,* New York City *(Leah C. Greenman* and *Virginia Goodman-Futterman* of counsel), for Johnson Chemical Co., Inc., appellant.

*LaBrum & Doak,* New York City *(John B. Cartafalsa, Jr.,* of counsel), for Aerofill, Inc., appellant.

*Smith, Mazure, Director & Wilkins, P. C.,* New York City *(Michael K. Berman* of counsel), for J.L. Variety, Inc., appellant.

*Amabile & Erman, P. C.*, Brooklyn *(Barbara J. Caputo* of counsel), for Concord Company, appellant.

*Leonard L. Finz, P. C.*, New York City, and *DiJoseph & Gluck*, New York City *(Leonard L. Finz, Steven DiJoseph* and *Arnold DiJoseph III* of counsel), for respondents. (One Brief filed.)

**OPINION OF THE COURT**

BRACKEN, J. P.

■ ■ May a plaintiff who admittedly failed to read the warnings supplied by the manufacturer of a product recover damages based on the theory that the manufacturer's warnings were inadequate? We hold that, under certain circumstances, a plaintiff may so recover.

On August 14, 1985, the plaintiff Julie Kono went to Bobby's Department Store II on Church Avenue in Brooklyn, and purchased approximately six or seven cans of a product which she described alternatively as "La Bomba" or "King Roach Spray". She intended to combat a roach infestation in her apartment in Staten Island because, in her words, "the roaches there were crawling all over eating and dropping from the ceiling".

Ms. Kono had sprayed her apartment on prior occasions. She testified at her deposition, "I always used a bomb". Ms. Kono had in fact used "La Bomba" on three or four previous occasions, the last such occasion having been in January 1985. However, Ms. Kono claimed to have no recollection of ever having read any of the instructions or warnings which accompany these products. She remembered seeing the name of the product, "King Roach Bomb", but nothing else.

Ms. Kono also testified at her deposition that on several prior occasions she had registered complaints with her landlord to the effect that her kitchen stove "does not come on". She claimed that whenever she used the stove she ignited the gas burner with a match. She stated that she did not know what a pilot light was, and that she did not know whether her stove was equipped with pilot lights.

Ms. Kono stored the six or seven cans of "La Bomba" in a closet overnight. At approximately 8:30 P.M. on the following day, Thursday, August 15, 1985, Ms. Kono took two or three of these cans into her kitchen. Her stove was not on at this time. According to her deposition testimony, she removed the top

from one of the cans and pressed a button. She stated that, prior to her accident, she had activated "[j]ust one can". She admitted that, prior to removing the top and pressing the button, she had not read anything on the label of that can.

The can started to emit the spray and Ms. Kono heard a "hissing sound". Less than one minute later, just after she had bent down to pick up the remaining cans, Ms. Kono testified that she heard "a boom" and saw "a fire". Both Ms. Kono and her sister, the coplaintiff Annie Johnson, who had just entered the kitchen, were burned. They were rescued by two other occupants of the apartment, who rushed them to the hospital.

The present action was then commenced against: (1) Johnson Chemical Co., Inc. (hereinafter Johnson), the distributor of a product known as "La Bomba", (2) Aerofill, Inc. (hereinafter Aerofill), the manufacturer of a certain indoor fogger roach and insect killer product known as King Spray Roach and Insect Killer a/k/a La Bomba, (3) J.L. Variety Inc., d/b/a Bobby's II (hereinafter J.L.), the seller of the product known as "La Bomba", and (4) the Concord Company, the plaintiffs' landlord.

By notice of motion dated October 19, 1989, the defendant Johnson moved for summary judgment dismissing the plaintiffs' complaint and the codefendants' cross claims against it. As the basis for this motion, Johnson's attorney argued that the injuries suffered by Ms. Kono and Ms. Johnson were caused exclusively by Ms. Kono's own reckless misuse of the product.

In support of this contention, Johnson submitted what its representative averred were accurate copies of the warnings which accompany "La Bomba". The label on the can instructed the user to "put out all flames and pilot lights" before use. Also, the warnings on the top of the can stated: "WARNING. USE ONLY ONE CAN PER ROOM. WARNING. ALL FLAMES, PILOT LIGHTS, BURNERS & OVENS MUST BE TURNED OFF BEFORE USING THIS PRODUCT".

Johnson also submitted a transcript of the deposition of Chief Donald Ruland, a member of the New York City Fire Department, who responded to the scene of the accident. He testified, "I found one roach bomb on the counter, one of the kitchen counters, and I found three roach bombs on the floor of the kitchen * * * These four were triggered. These were the type of roach bombs * * * where you turn them on and

you have a gadget that you can keep the spray or the fogger going".

Chief Ruland also testified that, based on his investigation, he concluded that the origin of the fire was in the area of the pilot light in the kitchen stove. He further was of the opinion that the use of four cans of "La Bomba" in an area as small as Ms. Kono's kitchen had been improper, and that the basic cause of the fire was "misuse of a flammable material".

The other defendants made cross motions for summary judgment on similar grounds. The plaintiffs, in addition to opposing the foregoing motion and cross motions, moved to strike the answer of the defendant Johnson.

In opposition to the defendants' motions, the plaintiffs submitted an affirmation executed by their attorney, as well as an affidavit executed by Fred Presant, a chemist and a "professional consultant in the areas of new product development". According to Mr. Presant, in order for a product warning to be effective, "it must specify the dangerous results in the context of the particular warning". He asserted that "La Bomba" is a product "commonly used in the kitchen area" and that the labels annexed to it should have specified the actual dangers (explosion or flash fires) which would present themselves if the product were used near a pilot light. The plaintiffs' attorney argued that, even if the warnings were adequate as a matter of law, the product in question should be considered defective because it is not significantly more effective than similar, nonflammable products.

■ The Supreme Court, Kings County (Shaw, J.), denied Johnson's motion, the cross motions of the three codefendants, and the plaintiffs' cross motion to strike Johnson's answer. On these appeals by the four defendants, we review only so much of the order as denied their respective motion and cross motions. For the following reasons, we modify the order so as to grant summary judgment to Concord.

■ On appeal, the defendants argue that the plaintiffs' injuries were caused solely by Ms. Kono's misuse of the product. It is true that the product was misused, in the sense that it was not used as intended by the manufacturer. The record establishes conclusively that at least one can of "La Bomba" was activated near a pilot light. It is also true that the injuries would not have occurred but for the use of the product in this way. There is, in other words, no question of fact as to whether the plaintiffs' injuries were caused by

Ms. Kono's misuse of the product. The question is whether this circumstance, by itself, absolves any or all of the defendants of liability.

■ A manufacturer may unquestionably be held liable for the failure to warn of the dangers which may result from the use of its product as intended (see, *Rastelli v Goodyear Tire & Rubber Co.*, 79 NY2d 289; *Voss v Black & Decker Mfg. Co.*, 59 NY2d 102; *Torrogrossa v Towmotor Co.*, 44 NY2d 709; *Alfieri v Cabot Corp.*, 17 AD2d 455, *affd* 13 NY2d 1027, 1 Weinberger, NY Products Liability § 18.04). Liability may be premised upon the complete absence of warnings as to a particular hazard (e.g., *Alfieri v Cabot Corp., supra)*, or upon the inclusion of warnings which are insufficient (see, e.g., *Fox v Wyeth Labs.*, 129 AD2d 611). Whether warnings are sufficient to alert the product user to potential hazards is usually, but not always, a question of fact (see, *Oliver v N.L. Indus.*, 170 AD2d 959; *Oliver v NAMCO Controls*, 161 AD2d 1188; *cf., Furstenheim v Congregation of First Church*, 21 NY2d 893, *affg* 28 AD2d 533; *Wolfgruber v Upjohn Co.*, 72 AD2d 59, *affd* 52 NY2d 768; *Oza v Sinatra*, 176 AD2d 926).

A more difficult question is whether, and under what circumstances, liability may be imposed based upon a manufacturer's failure to warn of the hazards which may follow from the use of a product in some abnormal way. The general rule is that there may be liability in such cases when it is proved that the abnormal use of the product in question was reasonably foreseeable (see, e.g., *Lugo v LJN Toys*, 75 NY2d 850; *McLaughlin v Mine Safety Appliances Co.*, 11 NY2d 62; *Howard Stores Corp. v Pope*, 1 NY2d 110; *Cramer v Toledo Scale Co.*, 158 AD2d 966; *Darsan v Guncalito Corp.*, 153 AD2d 868; *Trivino v Jamesway Corp.*, 148 AD2d 851; *Miller v Anetsberger Bros.*, 124 AD2d 1057, 1 Weinberger, NY Products Liability §§ 18.13, 23.10; 1 Frumer and Friedman, Products Liability § 2.22 [5]). Whether a particular way of misusing a product is reasonably foreseeable, and whether the warnings which accompany a product are adequate to deter such potential misuse, are ordinarily questions for the jury (see, *Heller v Encore of Hicksville*, 53 NY2d 716; *Trivino v Jamesway Corp., supra; Young v Elmira Tr. Mix*, 52 AD2d 202; 1 Weinberger, NY Products Liability § 18:17). Because, in the present case, a jury might conclude that Ms. Kono misused the product in a way which ought to have been foreseen by the defendants, we conclude that an issue of fact has been demonstrated as to

whether the warnings furnished by the defendant manufacturer were adequate.

The defendants make the additional argument that neither of the two plaintiffs should be permitted to recover on the basis of the alleged inadequacy of the warnings because Ms. Kono admitted that she did not bother to read the warnings which were in fact found on the product. This argument is not wholly unpersuasive. Clearly, a plaintiff who is injured as the result of his own misuse of a product may not recover on the basis of the defendant's failure to provide adequate warnings unless he proves that, if adequate warnings had been provided, the product in question would not have been misused. In other words, as in any products liability case, the plaintiff in an action premised on inadequate warnings must prove causation *(see, Cramer v Toledo Scale Co., supra; Belling v Haugh's Pools,* 126 AD2d 958; *see also, Glucksman v Halsey Drug Co.,* 160 AD2d 305, 307). It is perhaps difficult to see how a consumer who admittedly does not read the labels on the products which he or she uses can reasonably claim to have been injured *because* the text of such a label did not give a sufficient warning.

This argument loses its persuasive force, however, once it is understood that the intensity of the language used in the text of a warning is only one of the factors to be considered in deciding whether such warning is adequate. A second factor to be considered is the prominence with which such language is displayed *(see, e.g., Darsan v Guncalito Corp., supra).* For example, the warning "harmful if swallowed" is less intense than the warning, "swallowing will result in death"; however, the former, less intense warning, when displayed prominently in block letters on the front label of a product, may be ultimately more effective than the latter, more intense warning, when displayed unobtrusively in small letters in the middle of a 10-page package insert *(see, generally,* 1 Frumer and Friedman, Products Liability § 2.22 [5] [c]). A consumer such as Ms. Kono who, by her own admission, tends to ignore one sort of label, might pay heed to a different, more prominent or more dramatic label. The reasonableness of her behavior is for the jury to decide.

As noted by the Supreme Court in its decision, there are some courts which have held that a plaintiff who admittedly failed to read the warnings which the plaintiff alleges are inadequate may not recover on the theory that the issuance of adequate warnings would have prevented his injuries *(see,*

*McCleskey v Olin Mathieson Chem. Corp.*, 127 Ga App 178, 180, 193 SE2d 16, 18; *see also, Cobb Heating & Air Conditioning Co. v Hertron Chem. Co.*, 139 Ga App 803, 229 SE2d 681; *E.R. Squibb & Sons v Cox*, 477 So 2d 963 [Ala]; *Uptain v Huntington Lab.*, 723 P2d 1322 [Colo]; *Johnson v Niagara Mach. & Tool Works*, 666 F2d 1223 [8th Cir]). However, as the Supreme Court noted, there are several jurisdictions in which it has been held that a manufacturer who issues insufficient warnings may not avoid liability solely on the basis that the plaintiff failed to read the warnings which were issued *(see, Shell Oil Co. v Gutierrez*, 119 Ariz 426, 435-436, 581 P2d 271, 280-281; *Payne v Soft Sheen Prods.*, 486 A2d 712, 725 [DC]; *Butler v PPG Indus.*, 201 NJ Super 558, 563, 493 A2d 619, 621; *Jarrell v Monsanto Co.*, 528 NE2d 1158, 1163, 1168 [Ind]; *see also, D'Arienzo v Clairol, Inc.*, 125 NJ Super 224, 310 A2d 106; *Muncy v Magnolia Chem. Co.*, 437 SW2d 15 [Tex]; *Frankel v Lull Eng'g Co.*, 334 F Supp 913, 925-926, *affd* 470 F2d 995 [3d Cir]; *Spruill v Boyle-Midway, Inc.*, 308 F2d 79, 87 [4th Cir]). As did the Supreme Court, we conclude that the latter line of cases represents the better view, which we also believe is consistent with our own precedent.

In *Baker v St. Agnes Hosp.* (70 AD2d 400, 402), a doctor had prescribed the use of a certain drug for a patient known to be pregnant, even though the warnings contained in the package insert stated that the drug was "contraindicated for pregnant patients". The doctor had admitted, at his deposition, that "[h]e did not consult the package insert or any other source of information [on the drug] before ordering it for [the plaintiff]" *(Baker v St. Agnes Hosp., supra,* at 403). Although the drug had thus plainly been misused by the plaintiff's physician, and although the physician admittedly failed to read the warnings included with the drug, the Court nevertheless held that the drug's manufacturer could be held liable in the event that a jury were to find that the manufacturer's warnings were inadequate. The Court stated that the drug manufacturer could be held liable for its failure to "employ other, more effective means of communicating its warning" *(Baker v St. Agnes Hosp., supra,* at 407).

In light of the foregoing, we conclude that Ms. Kono's admitted failure to read the manufacturer's warnings concerning the use of "La Bomba" does not necessarily sever the causal connection between the alleged inadequacy of those warnings, on the one hand, and the occurrence of the accident, on the other. Neither plaintiff should be deprived of

recovery for this reason alone. Of course, the failure to provide warnings gives rise to liability not only against the manufacturer, but against the distributor and retailer as well *(see, e.g., Billsborrow v Dow Chem.,* 177 AD2d 7; *Denkensohn v Davenport,* 144 AD2d 58, *affd* 75 NY2d 25; *Sukljian v Ross & Son Co.,* 69 NY2d 89, 95-96).

▮ We therefore conclude that summary judgment was properly denied to all of the defendants, except to the defendant Concord. As to defendant Concord, there exists no basis for the imposition of liability, and summary judgment in its favor should have been granted.

▮ In its motion for summary judgment, the defendant Concord, as did its codefendants, relied on proof that Ms. Kono's misuse of "La Bomba" near a pilot light was the single act which resulted in the fire and the consequent injuries. Unlike its codefendants, however, Concord was not involved in the manufacture or distribution of "La Bomba", and therefore had no responsibility to warn Ms. Kono against the potential consequences of its misuse. In order to avoid the issuance of summary judgment in favor of Concord, the plaintiffs were obligated to produce competent evidence sufficient to demonstrate the existence of a question of fact as to whether negligence on the part of Concord in some way contributed to the occurrence of their injuries. The plaintiffs failed to make such a showing.

According to the complaint, Concord was negligent in failing to control the roach infestation which initially prompted Ms. Kono to purchase and use "La Bomba". However, as a matter of law, a flash fire cannot be considered among the consequences reasonably to be foreseen by a landlord who, assuming the truth of the plaintiffs' allegations, negligently allowed a roach infestation to develop. In other words, the negligent failure to exterminate a colony of roaches may not be considered the proximate cause of a flash fire.

The case of *Martinez v Lazaroff* (48 NY2d 819, *affg* 66 AD2d 874) is controlling. In *Martinez v Lazaroff (supra),* there was proof that a landlord had negligently failed to provide hot water to his tenants. As a result of this dereliction, one tenant had resorted to boiling water in the kitchen and then transporting it to the bathroom. On one occasion, as this tenant was carrying a pot of boiling water to the bathroom, he collided with and accidentally spilled the boiling water over his son, who was seriously injured. Both this Court and the

Court of Appeals concluded that the landlord's "failure to supply hot water * * * was [not] the direct cause of the injuries" and that the infant plaintiff's injuries were not "normally to have been expected to ensue from the landlord's dereliction" *(Martinez v Lazaroff, supra,* 48 NY2d, at 820; *see also, Wells v Finnegan,* 177 AD2d 893; *Laureano v Louzoun,* 165 AD2d 866; *Gonzalez v Pius,* 138 AD2d 453).

Another case which illustrates this principle is *Falcone v City of New York* (170 AD2d 575). In that case, the plaintiff claimed that her basement had been flooded with water which had backed up through the New York City sewer system. The plaintiff's decedent was killed in a fire which erupted while he and the plaintiff were trying to clean the flood damage using a volatile chemical. This Court held that any negligence on the part of the City which might have contributed to the original flood could not be considered the proximate cause of the decedent's death *(see also, Green v New York City Hous. Auth.,* 82 AD2d 780, *affd* 55 NY2d 966; *Martinez v Lazaroff, supra; Ventricelli v Kinney Sys. Rent a Car,* 59 AD2d 869, *affd* 45 NY2d 950, *mot to amend remittitur granted* 46 NY2d 770).

In accordance with this authority, we conclude that the alleged negligence of the defendant Concord in permitting a roach infestation to exist in Ms. Kono's apartment was not a "proximate cause" of the accident as a matter of law, even though there may have been an attenuated causal link between that negligent omission and the accident as a matter of fact. There is no proof that any other negligent act or omission on the part of Concord caused or contributed to the accident in any way. The defendant Concord is, therefore, entitled to summary judgment dismissing the plaintiffs' complaint insofar as it is asserted against it. Since Concord owed no independent duty of care to any of its codefendants, the dismissal of the plaintiffs' complaint warrants the dismissal of all cross claims against it as well *(see, Nassau Roofing & Sheet Metal Co. v Facilities Dev. Corp.,* 125 AD2d 754, *affd* 71 NY2d 599; *cf., Garrett v Holiday Inns,* 58 NY2d 253).

In accordance with the foregoing, the order is modified, on the law, by deleting the third decretal paragraph thereof denying Concord's cross motion for summary judgment dismissing the complaint and the cross claims asserted against it, and by substituting therefor a provision granting that cross motion, and severing the action against the remaining defendants; as so modified, the order is affirmed insofar as appealed

from, with one bill of costs payable to the plaintiffs and Concord, by Johnson, Aerofill, and J.L.*

LAWRENCE, RITTER and COPERTINO, JJ., concur.

Ordered that the order is modified, on the law, by deleting the third decretal paragraph thereof denying the cross motion of Concord Company for summary judgment dismissing the complaint and the cross claims asserted against it, and substituting therefor a provision granting that cross motion and severing the action against the remaining defendants; as so modified, the order is affirmed insofar as appealed from, with one bill of costs payable to the plaintiffs and to the appellant Concord Company, by the appellants Johnson Chemical Co., Inc., Aerofill, Inc., and J.L. Variety, Inc., d/b/a Bobby's II.

---

* We need not address the merits of the argument made by the attorneys for Johnson Chemical Company in the course of the letter dated July 27, 1992, which was mailed to the members of the Court after the argument of this appeal. In this case, the defense counsel argues that the existence of preemptive Federal regulations which govern the labeling of insecticides precludes the plaintiffs from imposing tort liability on the basis of the defendants' alleged breach of their duty to warn. We choose not to review this argument, because it has been improperly raised, without permission, subsequent to oral argument (see, 22 NYCRR 670.19 [i]). Moreover, this argument was not made in the Supreme Court, either in support of the motion for summary judgment made by Johnson Chemical Company, or in support of any of the cross motions. As a result, the Supreme Court did not have the opportunity to pass on this issue. Review of this issue is inappropriate because the record does not contain sufficient evidence to justify a conclusion that, as a matter of law, the labels furnished with the product in question did, in fact, comply with Federal regulations.