[639 NYS2d 592]

PHILLIP D. DOTY, SR., Individually and as Parent and Natural Guardian of PHILLIP D. DOTY, JR., an Infant, et al., Respondents-Appellants, v NAVISTAR INTERNATIONAL TRANSPORTATION CORP., Formerly Known as INTERNATIONAL HARVESTER CO., et al., Appellants-Respondents, and Estate of MAYNARD A. ELWELL, Deceased, Respondent.

Fourth Department, March 8, 1996

34

### APPEARANCES OF COUNSEL

*Herzfeld & Rubin, P. C.,* New York City *(Herbert Rubin, Michael Hoenig, David B. Hamm* and *Linda M. Brown* of counsel *[Pearl & Smith]),* for International Harvester, appellant-respondent.

*Maghran, McCarthy & Flynn,* Buffalo *(John Flynn* of counsel), for Batavia Farm Equipment, Inc., appellant-respondent.

*Andrews, Sanchez, Amigone, Kelleher, Mattrey & Marshall,* Buffalo *(Benjamin J. Andrews, Richard A. Clack* and *Kimberlee Lupton Danieu* of counsel), for Phillip D. Doty, Sr. and another, respondents-appellants.

*Grosse, Chelus, Herdzik & Speyer, P. C.,* Buffalo *(Debra Chimes* of counsel), for respondent.

### OPINION OF THE COURT

WESLEY, J.

### I

Phillip Doty, Jr. (Phillip) lost his left arm in a farm accident on October 17, 1981. Phillip, then nine years old, was sitting

on the open grain bin of an International Harvester model 105 combine that his grandfather Maynard A. Elwell was using to harvest corn. At the time of the accident, the combine was stopped so that Mr. Elwell could check the moisture content of the grain. Mr. Elwell left the combine engine idling; the engine rotated a leveling auger extending across the middle of the grain bin. Mr. Elwell heard a noise and climbed back onto the combine, to find Phillip caught on the leveling auger as it rotated. By the time that Mr. Elwell shut off the combine, the auger had ripped off Phillip's arm, which could not be reattached.

Phillip's parents commenced this products liability action individually and on behalf of Phillip against defendants Navistar International Transportation Corp. (formerly known as International Harvester Co.) and Navistar Transportation Corporation of Canada, Ltd. (formerly known as International Harvester Co. of Canada, Ltd.) (collectively, International Harvester), the manufacturer of the combine; Batavia Farm Equipment, Inc. (Batavia), the seller of the combine; and the estate of Mr. Elwell, who had died prior to commencement of the action. After a trial, the jury, by a 5 to 1 verdict, found that the grain tank and leveling auger assembly of the model 105 combine were negligently designed by International Harvester and were defective, and that the negligent design and the defect were each a proximate cause of Phillip's injuries. The jury also found, by a unanimous verdict, that International Harvester failed to provide adequate warnings of the dangers associated with the grain tank and leveling auger assembly and that the inadequate warnings were a proximate cause of Phillip's injuries. The jury's apportionment of fault was 50% to International Harvester and 50% to Mr. Elwell's estate.

The jury awarded Phillip a total of $1,500,000 for past and future pain, suffering and loss of enjoyment of life; $1,400,000 for diminishment of earning capacity; and $100,000 for impairment of ability to perform household services. On motion of defendants after trial, Supreme Court set aside those portions of the award for diminishment of earning capacity and impairment of ability to perform household services unless plaintiffs agreed to accept the sum of $418,694 for diminishment of earning capacity and the sum of $24,544 for impairment of ability to perform future household services, representing the court's computation of their present value.

## II

■ We conclude that the jury verdict is supported by sufficient evidence with respect to the theories of liability, i.e., negligent/defective design and failure to warn. The evidence is sufficient to support the verdict unless " 'there is simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence presented at trial' " (*Mirand v City of New York*, 84 NY2d 44, 48-49). Plaintiffs presented expert testimony that the edges of the leveling auger could have been tapered, and that the auger could have been attached to its rotating shaft by recessed allen screws rather than protruding square-headed set screws, which would have made the auger less likely to snare clothing and cause injury. Plaintiffs also presented the testimony of an expert and a farmer that a guard could have been devised to shield the auger. The proof of a feasible alternative design was sufficient to present a question of fact for the jury (*see, Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 107-109).

Similarly, the adequacy of the warning labels on the combine presented a question of fact for the jury (*see, Johnson v Johnson Chem. Co.*, 183 AD2d 64, 69; *Cooley v Carter-Wallace Inc.*, 102 AD2d 642, 647; 1 NY PJI2d 310 [1996 Supp]). Unlike the dangers presented by the farm equipment in *Van Buskirk v Migliorelli* (185 AD2d 587, *lv denied* 80 NY2d 761) and *Neri v John Deere Co.* (211 AD2d 915, 916), the danger that a slowly revolving auger with protruding set screws would ensnare nearby clothing and mutilate the wearer was not, as a matter of law, readily discernible to an infant plaintiff who would not be classified as a knowledgeable user (*see, Czosek v Sears, Roebuck & Co.*, 174 AD2d 1013; *cf., Ploof v Stone Constr. Equip.*, — AD2d —, 1995 NY Slip Op 10191 [4th Dept, Nov. 15, 1995]).

## III

We further conclude that the jury's verdicts are not against the weight of the evidence; it cannot be said that the verdicts could not have been reached upon any fair interpretation of the evidence (*cf., Harrison v Harrison*, 199 AD2d 1091). The jury could have resolved the conflicting expert testimony in plaintiffs' favor, both on the theories of negligent/defective design and on the theory of failure to warn.

## IV

■ We reject the contention that the admission of evidence of other combine accidents requires reversal. The court's cura-

tive instruction alleviated the possibility of any prejudice to defendants that might have arisen from the admission of evidence of an accident involving a different combine model from the one at issue here. Proof of a similar accident involving the same combine model was admissible as proof that the combine was unreasonably dangerous and defective (*see, e.g., Carnibucci v Marlin Firearms Co.*, 51 AD2d 1067).

## V

■ Any error in the admission of evidence of a portion of a warning label on a later combine model was harmless. Although that evidence involved a warning that was different from the warning present on Mr. Elwell's combine, the parties focused on only two elements of that warning, and those elements are virtually identical to the warnings on Mr. Elwell's combine.

■ The court did not err in admitting evidence that the edges of the auger on a later combine model were tapered. Evidence of a manufacturer's postmanufacture modification is admissible in a design defect case if the manufacturer contests the feasibility of that design modification (*see, Haran v Union Carbide Corp.*, 68 NY2d 710, 711-712). Because witnesses for International Harvester had contended that tapering the auger would have defeated its function, plaintiffs were entitled to impeach their testimony with proof of the design modification (*see*, 2 McCormick, Evidence § 267, at 201-203 [4th ed]).

■ The court erred, however, in admitting evidence that International Harvester used recessed allen screws rather than protruding set screws on the auger in a later combine model. International Harvester's witnesses never contended that allen screws could not be used, but instead indicated that they were less desirable because, at the time the combine was manufactured, farmers were less likely to carry large allen wrenches, and the screws were more likely to strip and to collect debris. Because there is a "substantial risk that such evidence may [have been] overemphasized by the jury" (*Cover v Cohen*, 61 NY2d 261, 270), the evidence should have been excluded.

The error, however, does not require reversal, inasmuch as it affects only plaintiffs' theories of negligent/defective design and not failure to warn. The use of allen screws on a later model combine bears no logical relationship to the adequacy of the warning labels on the model 105. Because the verdict on the failure to warn theory is unaffected, reversal is not required (*see*, Siegel, NY Prac § 399, at 601 [2d ed]).

## VI

■ The court did not err in refusing to instruct the jury on intervening cause. On the facts of this case, Phillip's actions were "not extraordinary under the circumstances and thus should not be viewed as superseding acts which, as a matter of law, break the causal link" (*McMorrow v Trimper*, 149 AD2d 971, 973, *affd* 74 NY2d 830; *see also, Gordon v Eastern Ry. Supply*, 82 NY2d 555, 562). We have considered defendants' remaining contentions regarding the jury instructions and evidentiary rulings of the court, and conclude that they are without merit.

## VII

■ Contrary to defendants' contention, there was an evidentiary basis for the jury's award of damages for diminished earning capacity. The proof established that the disability of Phillip was likely to affect his future earnings and to diminish his work life expectancy. Finally, contrary to plaintiffs' contention, the court had the authority to reduce the award to its present value (*see, Tormey v Consolidated Edison Co.*, 184 AD2d 299, 300).

## VIII

Accordingly, for all of the foregoing reasons, the order and judgment should be affirmed.

PINE, J. P., CALLAHAN, DAVIS and BOEHM, JJ., concur.

Order and judgment unanimously affirmed, without costs.