■ MANUEL REIS et al., Respondents, v VOLVO CARS OF NORTH AMERICA, INC., et al., Defendants, and VOLVO CARS OF NORTH AMERICA, LLC, et al., Appellants. (And a Third-Party Action.) [901 NYS2d 10]—

Order, Supreme Court, New York County (Barbara R. Kapnick, J.), entered on or about March 4, 2009, which, to the extent appealed from, denied the motion of defendants-appellants Volvo Cars of North America, LLC, Volvo Car Corporation and Ford Motor Company for summary judgment dismissing the complaint, modified, on the law, plaintiffs' failure to warn claims dismissed, and otherwise affirmed, without costs.

On May 24, 2002, plaintiff Manuel Reis arrived at the home of Americo Silva and observed Silva near a 1987 Volvo station wagon. Silva asked Reis if he wanted to see the engine running and Reis said "yes." Reis stood in front of the vehicle with the hood open. Silva, who was beside the car, reached into the driver's side open window and turned the ignition key while the manual transmission was in first gear. Though Silva did not apply the clutch pedal, he recalled that the parking brake was "on."[1] When the car started, it lurched forward and crushed Reis's left leg. The vehicle was not equipped with a starter interlock, a device that prevents a manual transmission automobile from starting if it is in gear and the clutch pedal is not depressed. Plaintiffs brought claims against defendants-appellants sounding in strict liability and negligence alleging a design defect and failure to warn.

Summary judgment was properly denied on the design defect claims. In support of their motion, defendants-appellants failed to submit an affidavit from an engineer or automotive expert attesting to the vehicle's safety. Instead, they merely presented evidence that they had not received any prior complaints about

---

1. An inspection of the car four years later by an employee of defendant-appellant Volvo Cars of North America, LLC revealed that the parking brake was at the limit of its effective operation and in need of adjustment. Whether or not the parking brake was on, fully engaged or in working order on the day of the accident was neither the focus of the motion court's decision nor the parties' arguments on appeal.

injuries or damage due to the lack of a starter interlock, and that, from the date Silva's Volvo was manufactured up until the date of the accident, there existed no statutes or regulations requiring the use of starter interlocks on manual transmission vehicles.

Regardless of whether this sparse evidence satisfies defendants-appellants' prima facie burden in moving for summary judgment, the affidavit of plaintiffs' expert raised a triable issue of fact as to whether, in the absence of a starter interlock, the vehicle was "not reasonably safe" (*Voss v Black & Decker Mfg. Co.*, 59 NY2d 102, 108 [1983]). Plaintiffs' expert, Thomas J. Feaheny, is an automotive engineering consultant and former vice-president for vehicle research at Ford Motor Company. He was instrumental in Ford's decision to begin installing starter interlock devices in their manual transmission vehicles. Feaheny explained that starter interlocks were included in Ford and Chevrolet manual transmission automobiles as early as the 1970s and were widely used by U.S. and foreign automobile makers in 1987, when Silva's Volvo was manufactured.[2]

Feaheny stated that a starter interlock could have easily and inexpensively been installed on the subject automobile and that a manual transmission vehicle without such a device is unreasonably dangerous. He concluded that if a starter interlock had been installed on Silva's Volvo, the instant accident would most likely not have occurred. Contrary to defendants-appellants' position, the expert's failure to employ the phrase "reasonable degree of scientific certainty" does not render his affidavit invalid as a matter of law (*see John v City of New York*, 235 AD2d 210 [1997]).

Whether Silva's method of starting the car by turning the key while he was beside the vehicle was a reasonably foreseeable use of the automobile is a question for the trier of fact. "A manufacturer who sells a product in a defective condition is liable for injury which results to another when the product is used for its intended purpose or for an unintended but reasonably foreseeable purpose" (*Lugo v LJN Toys*, 75 NY2d 850, 852 [1990]). Defendants-appellants presented no evidence, expert or otherwise, showing that Silva's method of starting the vehicle, even if an unintended use, was not a foreseeable one. A jury could reasonably conclude that it was foreseeable that a car owner might turn on the ignition while standing outside the car, especially if someone else was examining the engine, and

---

**2.** In an interrogatory response, plaintiffs identified over a dozen vehicle models, made by Chevrolet, Toyota, Nissan and GMC, that were manufactured with starter interlocks before 1987.

that this act was not the sole or superseding cause of the accident (*see Valentin v Bretting, Mfg., Co.*, 278 AD2d 230 [2000]).

The failure to warn claims should have been dismissed because there is no evidence that any such failure was a proximate cause of the injury. In *Sosna v American Home Prods.* (298 AD2d 158 [2002]), this Court held that a plaintiff asserting a failure to warn claim must adduce proof "that the user of a product would have read and heeded a warning had one been given" (298 AD2d at 158). Here, there is no proof in the record that Silva would have read and heeded a warning about the risk of the car's lurching forward if it is started while in gear and without depressing the clutch pedal. To the contrary, Silva testified at his deposition that an owner's manual came with the vehicle, but he did not need to read it because he understood how cars operated. Thus, any purported absence of a warning in the owner's manual was not a substantial factor in bringing about the injury (*see Guadalupe v Drackett Prods. Co.*, 253 AD2d 378 [1998]).

The dissent does not address this Court's decisions in *Sosna* and *Guadalupe*, but instead relies on a number of cases which we find distinguishable. For example, in *Johnson v Johnson Chem. Co.* (183 AD2d 64 [1992]), although the plaintiff admitted that she did not read the warning label on a can of insecticide, the Second Department affirmed denial of the manufacturer's motion for summary judgment focusing on the fact that the warning may not have been prominently displayed. Likewise, the other cases cited by the dissent (*see e.g. Humphrey v Diamant Boart, Inc.*, 556 F Supp 2d 167 [ED NY 2008]) all involve questions of fact as to the conspicuousness, prominence and/or placement of the warnings.

Here, however, it is immaterial how prominent or conspicuous any warning in the owner's manual might have been because it is undisputed that Silva did not read the manual and would not have been likely to read it because he was familiar with how cars operated. Silva's admission that he did not read the manual severs the causal connection between the alleged failure to warn and the accident (*see Sosna*, 298 AD2d at 158, *Guadalupe*, 253 AD2d at 378).

Plaintiffs' suggestion on appeal that a warning label should have been placed on the dashboard or gear shift, and that such a warning would have prevented the accident, is based on speculation. The complaint does not contain any allegation that a warning should have been in the vehicle itself. Nor does the deposition testimony, or plaintiff's expert affidavit, support such a claim or even explain where such a warning label should have

been. Plaintiffs also point to no evidence in the record that other potential vehicle safety hazards are typically warned against by the use of interior labeling as opposed to the inclusion of such information in the owner's manual. Moreover, there is no evidence that Silva would have read and heeded a warning if it had been located in the car itself. Since Silva started the car from outside, it is hard to imagine how a warning on the dashboard or gear shift would have prevented the accident.

Defendant-appellant Ford was not entitled to summary judgment because while it did show that it had no role in the design and manufacture of the subject car, it presented no evidence on the nature of its acquisition of Volvo in 1999, and whether it had taken on any contractual or other liabilities. Concur—McGuire, J.P., Renwick and Richter, JJ.

Manzanet-Daniels, J., concurs in part and dissents in part in a memorandum as follows: I agree with the majority that defendants' motion for summary judgment on the design defect claim was properly denied; however, I cannot agree that plaintiff's failure to warn claim should be dismissed.

A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known, and of the danger of unintended uses of a product provided those uses are reasonably foreseeable (see Liriano v Hobart Corp., 92 NY2d 232 [1998]). The Court of Appeals has described the standard for evaluating failure-to-warn liability as "intensely fact-specific, including but not limited to such issues as feasibility and difficulty of issuing warnings in the circumstances; obviousness of the risk from actual use of the product; knowledge of the particular product user; and proximate cause" (id. at 243 [citation omitted]).

The majority rejects the failure to warn claim because it credits defendants' argument that they cannot be liable for failing to include a warning in the instruction manual since Silva, the vehicle owner, admitted that he never read the manual, and because both Silva and plaintiff were allegedly "familiar" with manual transmission vehicles. These assertions overstate the import of the deposition testimony. Furthermore, a failure to warn claim is not automatically precluded by a product user's failure to read a warning or instruction manual.

The deposition testimony did not establish that either the vehicle owner Silva, or the injured plaintiff were aware of the specific danger that defendants should have warned against, i.e., the fact that the vehicle could lurch forward (which it did—causing grave injury necessitating amputation of plaintiff's leg) if started while the vehicle was in gear. Silva merely testified

that when he learned how to drive a car with a manual transmission, many years ago in Portugal, he became aware that the car could "jump" forward if it stalled.* Plaintiff (who, prior to the accident, was not even aware that the Volvo was a manual transmission vehicle) testified that he was familiar with how to operate stick shift vehicles and had driven them in Portugal, from where he, too, had emigrated many years previous. The last time plaintiff had owned and operated a stick shift vehicle had been in 1974 in Portugal. He testified that he was aware that a vehicle with a standard transmission could lurch forward "a couple of inches" if it wasn't given enough gas or if it stalled. At no time during their depositions were they asked whether, nor did they ever testify that, they were aware of the specific danger of starting an engine in a parked vehicle while the vehicle is in gear and the clutch not engaged.

A product user's admitted failure to read the manufacturer's warnings "does not necessarily sever the causal connection between the alleged inadequacy of those warnings, on the one hand, and the occurrence of the accident, on the other," and a plaintiff ought not be deprived of recovery for this reason alone (*Johnson v Johnson Chem. Co.*, 183 AD2d 64, 71 [1992] [plaintiff's admission that she failed to read warning on can of roach spray, which warned users that all flames, pilot lights and burners were to be turned off prior to use, did not defeat plaintiff's right to recover on a theory of failure to warn]; *German v Morales*, 24 AD3d 246 [2005]; *see also Humphrey v Diamant Boart, Inc.*, 556 F Supp 2d 167, 181 [ED NY 2008] [plaintiff's admission that he did not read the warning label or operating instructions on equipment not dispositive under New York law in connection with failure to warn claim]).

As the appellate court in *Johnson* explained,

"It is perhaps difficult to see how a consumer who admittedly does not read the labels on the products which he or she uses can reasonably claim to have been injured *because* the text of such a label did not give a sufficient warning.

"This argument loses its persuasive force, however, once it is understood that the intensity of the language used in the text of a warning is only one of the factors to be considered in deciding

---

* In fact, Silva testified that he had a "habit" of leaving the car in first gear. He had been taught by his father and brother to leave a car in reverse if he was parked on a downhill, and in first gear if he was parked uphill, with the parking brake, to keep himself steady on the incline. Significantly, although this was his habit, Silva had evidently never had the experience of a car with manual transmission lurching forward when it was started in first gear with the parking brake on.

whether such warning is adequate. A second factor to be considered is the prominence with which such language is displayed . . . A consumer such as [the plaintiff] who, by her own admission, tends to ignore one sort of label, might pay heed to a different, more prominent or more dramatic label. The reasonableness of her behavior is for the jury to decide." (*Johnson* at 70; *see Humphrey*, 556 F Supp 2d at 181 ["a plaintiff may be able to argue that the warnings, in addition to being substantively inadequate, were insufficiently conspicuous or prominent and, thus, be able to overcome his or her failure to read them"]; *Anderson v Hedstrom Corp.*, 76 F Supp 2d 422, 443 [SD NY 1999] ["(T)he location and conspicuousness of the warnings (whether that be based on label or letter size, color, or other attributes of conspicuousness), and the role those factors played in the plaintiff's failure to read them, as well as the content and clarity of those warnings, are disputed issues . . . and the plaintiff's failure to read the warnings should not, in and of itself, prevent the 'failure to warn' claim from going before the jury"].)

The owners' manual at issue, while it discusses the procedures for starting the vehicle, contains no warnings whatsoever concerning this particular hazard. Furthermore, plaintiff was not the vehicle owner and was not in a position to read the owners' manual. Thus, the rationale for barring a product owner or plaintiff from recovery due to the failure to read the warnings supplied is even less compelling (*see Anderson v Hedstrom Corp.*, 76 F Supp 2d 422, 443 [1999] [rejecting argument that plaintiff's failure to read warnings accompanying trampoline precluded his failure to warn claim, observing that a "jury could also reasonably conclude that the placement of such a warning in the middle of an *owner's* manual, rather than (for example) in bold letters on the trampoline itself, was insufficient to alert a *user* to the danger, either because there was no notice on the trampoline about the existence of such a manual or warning, or simply because the manufacturer, by putting it in a more obvious place, might have employed 'other, more effective means of communicating its warning' "]).

In sum, I cannot agree with the majority that the vehicle owner's failure to read the manual severed the causal connection between plaintiff's failure to warn claim and his injuries. There is a presumption under New York law that a user would have heeded warnings if they had been provided, and that the injury would not have occurred (*see id.*). This presumption can be rebutted by proof that an adequate warning would have been futile since plaintiff would not have read it; however, the burden

is on the manufacturer to prove that, even if adequately warned, the plaintiff would not have read the warnings and his behavior would have remained unchanged (*see Liriano v Hobart Corp.*, 170 F3d 264, 271-272 [2d Cir 1999] ["it is up to the defendant to bring in evidence tending to rebut the strong inference, arising from the accident, that the defendant's negligence was in fact a but-for cause of the plaintiff's injury. This shifting of the *onus procedendi* has long been established in New York"]).

I would hold that at this stage, defendant manufacturer has failed to overcome this burden and that an issue of triable fact exists regarding whether the "warnings" contained in the owner's manual were sufficient to warn the user of the danger of the car lurching forward. [**Prior Case History: 2009 NY Slip Op 30467(U).**]