23-320-cv
*Khusenov v. Prokraft Inc.*

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6ᵗʰ day of March, two thousand twenty-four.

Present:

> RICHARD C. WESLEY,
> DENNY CHIN,
> EUNICE C. LEE,
> *Circuit Judges.*

_____

ISOJON KHUSENOV,

> *Plaintiff-Appellant*,

v.                                                                                    23-320-cv

PROKRAFT INC.,

> *Defendant-Third-Party-Plaintiff-Counter-Defendant-Appellee*,

PRO-CUT,

> *Defendant-Counter-Defendant-Appellee*,

v.

KARZINKA US, INC.,

> *Third-Party-Defendant-Counter-Claimant-Appellee*.

For Plaintiff-Appellant, Isojon Khusenov:

SIMON Q. RAMONE (Yuriy Prakhin, Law Office of Yuriy Prakhin P.C., Brooklyn, NY, *on the brief*), Ramone Law Firm, PLLC, White Plains, NY.

For Defendant-Third-Party-Plaintiff-Counter-Defendant-Appellee, Prokraft, Inc. and Defendant-Counter-Defendant-Appellee, Pro-Cut:

PETER URRETA, O'Connor Redd Orlando LLP, Port Chester, NY.

For Third-Party-Defendant-Counter-Claimant-Appellee, Karzinka US, Inc.:

MICHAEL T. REAGAN (Thomas M. Evans, *on the brief*), Congdon, Flaherty & O'Callaghan, Uniondale, NY.

Appeal from a February 7, 2023 judgment of the United States District Court for the Eastern District of New York (Gonzalez, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Isojon Khusenov ("Khusenov") initiated an action in district court against Prokraft, Inc. ("Prokraft") and Pro-Cut (together, the "Distributor Appellees") to recover for severe injuries he sustained while using a Pro-Cut KG-32 meat grinder. At the time of his injury, Khusenov worked for Karzinka US Inc. ("Karzinka" or "Employer Appellee") as a butcher

apprentice.[1]

Khusenov filed suit against the Distributor Appellees in New York state court, asserting claims of negligence, strict products liability, and breach of express and implied warranties. The case was removed to the Eastern District of New York, and the Distributor Appellees filed a third-party complaint against Karzinka, seeking contribution and common law indemnity for any potential judgment against the Distributor Appellees. In response, Karzinka filed a cross-claim against the Distributor Appellees, also seeking indemnity in the event of a judgment against Karzinka. Both the Distributor Appellees and Karzinka filed separate motions for summary judgment seeking to dismiss all of Khusenov's claims. Additionally, the parties filed motions seeking to disqualify each other's experts and exclude their testimony.

The district court granted the motions for summary judgment against Khusenov and dismissed the case. *See Khusenov v. Prokraft Inc.*, No. 21-cv-3703 (HG), 2023 WL 1785527 (E.D.N.Y. Feb. 6, 2023). Khusenov now appeals.

"We review the district court's rulings on summary judgment *de novo*, resolving all ambiguities and drawing all permissible inferences in favor of the nonmoving party." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 83 (2d Cir. 2020). "We review a 'district court's decision to admit or exclude expert testimony under a highly deferential abuse of discretion standard.'" *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982 F.3d 113,

---

[1] The Court will refer to the Distributor Appellees and Employer Appellee together as "Appellees."

122 (2d Cir. 2020) (quoting *Zuchowicz v. United States*, 140 F.3d 381, 386 (2d Cir. 1998)). "A decision to admit or exclude expert scientific testimony is not an abuse of discretion unless it is manifestly erroneous." *Id.* (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002)).

We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, to which we refer only as necessary to explain our decision to affirm.

\*             \*             \*

The meat grinder at issue in this case was sold by Distributor Appellee Prokraft. The parties do not dispute that the meat grinder, as sold, "was equipped with [a] safety guard from the manufacture[r] which was not a removable device." App'x at 158 (Distributor Appellees' Rule 56.1 Statement (first alteration in original) (internal quotation marks omitted)); *see also* App'x at 241 (Khusenov's Rule 56.1 Statement admitting this fact). The parties further agree that the meat grinder came with a "plunger" (also referred to as a "stomper" or "pusher"), which was meant to push meat into the machine and "thus keep [the] machine[] operator's hand away from the head stock opening." App'x at 159 (Distributor Appellees' Rule 56.1 Statement); *see also* App'x at 241 (Khusenov's Rule 56.1 Statement admitting this fact). Lastly, a warning label was affixed on the front of the meat grinder which stated the following:

> WARNING
> Moving parts can crush and cut.
> Keep hands and fingers out of grinder head.
> Do NOT use hands to feed product into machine, use the stomper or pusher.
> Do NOT operate if safety guard is removed or damaged.

App'x at 264.

On January 7, 2020, Karzinka purchased the meat grinder from a non-party retailer for use at one of its stores ("the Meat Store"). Eventually, the butchers at the Meat Store decided to remove the safety guard on the meat grinder because it was slowing down their work. Some of the butchers asked another Meat Store employee to remove the safety guard. The employee first attempted to remove the safety guard using a hammer, but when that did not work, he ultimately removed it by using an angle grinder for 10 to 15 minutes to grind the cover off.

Khusenov began working at the Meat Store in June 2020. He was employed as a butcher apprentice, and had been working at the store for approximately six months when he began operating meat grinders, including the one at issue. As a part of his job, Khusenov operated the meat grinder up to four or five times a week. Khusenov would place meat onto a tray at the top of the grinder and push the meat toward the hole at the end of the tray, which was no longer covered by a safety guard. On May 29, 2021, Khusenov was operating the meat grinder when the sleeve of his uniform, which was too big for him, got caught in the machine. His right hand and arm were pulled into the grinder and crushed. As a result of the accident, Khusenov had to have his right arm amputated just below the elbow.

On appeal, Khusenov contends that the district court erred in four ways: (1) excluding Plaintiff's expert, Dr. Andrew Foley ("Dr. Foley"), from opining on the foreseeability of the removal of the safety guard; (2) finding that Appellees had established that the meat grinder was safe as designed; (3) finding that the substantial modification defense applied as a matter of law; and (4) finding that the warning label was adequate as a matter of law. The Court finds all of Khusenov's arguments to be without merit and addresses each of them below.

First, the district court did not abuse its discretion by excluding Dr. Foley's opinion on the foreseeability of removing the safety guard. The district court meticulously analyzed Dr. Foley's qualifications, methodologies, and conclusions and ultimately precluded his testimony which opined on how users were likely to remove the safety guard in order to obtain the high, advertised meat-processing rates. Specifically, the district court provided the following analysis:

> When pressed to provide an explanation for his conclusion . . . Dr. Foley admitted that (i) he did not ascertain the processing capabilities of the Meat Grinder; (ii) he did not attempt to place meat into the hole of the Meat Grinder; (iii) he does not know what the processing rate for workers at Karzinka is; and (iv) he did not cite any studies for the conclusion that the Meat Grinder would be unable to meet the processing rates advertised other than his view that it would be a 'feat' to get 3,000 pounds of meat into the Meat Grinder.

*Khusenov*, 2023 WL 1785527, at *6. The Court finds the district court's analysis to be well reasoned and accordingly affirms the district court's decision to exclude this portion of Dr. Foley's testimony.

Second, Appellees established that the meat grinder was not defective at the time it was sold. "A defendant moving for summary judgment based on substantial modification . . . . must make the same showing required to prevail on any design defect claim: that the product was 'not defective' at the time it was manufactured and sold." *Hoover v. New Holland N. Am., Inc.*, 23 N.Y.3d 41, 56 (2014) (quoting *Robinson v. Reed-Prentice Div. of Package Mach. Co.*, 49 N.Y.2d 471, 479 (1980)); *see also id.* at 54 ("To establish a prima facie case for design defect, the plaintiff must show that the defendant 'breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe and that the defective design was a substantial factor in causing plaintiff's injury.'" (quoting *Voss v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 107

6

(1983))).

Khusenov contends that "neither party has submitted evidence conclusively showing . . . that the guard would have prevented [Khusenov's] accident." Appellant Br. at 17; *see also id.* at 18 ("Even after expert discovery, Prokraft and Karzinka still failed to show that the safety guard [could have] utterly prevented Plaintiff's accident from occurring."). However, the record plainly shows that *both* parties submitted expert testimony *agreeing* that the safety guard would have prevented Khusenov's accident. Appellees' expert, George H. Pfreundschuh, submitted an affidavit attesting that "[t]he permanent guard secured to the top of the headstock prevented a person from accessing the rotating worm/auger that could cause injury." App'x at 350. And Khusenov's own expert testified the same during his deposition:

> Q: . . . [Y]ou're aware that this machine had a permanent fixed guard, correct?
> A. Correct.
> Q. Okay. And as a permanent fixed guard in the design of the safety guard on this machine, it would not allow one's hand to go down into the opening of the headstock, correct?
> A. Correct.
> Q. And under no circumstances could one get their hand into the headstock with that fixed safety guard in place, correct?
> A. I'm not sure about children, small hands and stuff.
> Q. Well, outside of children operating the machine, correct?
> A. Correct.

Reply in Supp. re Mot. for Summ. J. at 182:25–183:1–18, *Khusenov v. Prokraft Inc.*, (No. 21-CV-3703-HG), 2023 WL 1785527, ECF No. 55-2 (Ex. A Foley Dep. Tr.). Khusenov's expert went further and agreed that it was a "misuse" of the grinder to "cut[] off the guard." *Id.* at 176:23–177:2. Thus, there was adequate evidence, provided by both parties, for Appellees to make the initial showing that the meat grinder was "not defective" at the time it was made and sold to

7

Karzinka.  *See Hoover*, 23 N.Y.3d at 56.[2]

Third, it is undisputed that Karzinka's employees substantially modified the meat grinder to remove the safety guard.  "[W]hile '[a] cause of action in negligence will lie where it can be shown that a manufacturer was responsible for a defect that caused injury, and that the manufacturer could have foreseen the injury, [m]aterial alterations at the hands of a third party which work *a substantial change in the condition in which the product was sold by destroying the functional utility of a key safety feature, however foreseeable that modification may have been,* are not within the ambit of a manufacturer's responsibility."  *Id.* at 55–56 (emphasis added) (second and third alterations in original) (quoting *Robinson*, 49 N.Y.2d at 480–81); *see also id.* at 54 ("It is well settled, however, 'that a manufacturer, who has designed and produced a safe product, will not be liable for injuries resulting from substantial alterations or modifications of the product by a third party which render the product defective or otherwise unsafe.'"  (quoting *Amatulli v. Delhi*

---

[2]  Khusenov's arguments regarding the inadequacy of his own expert's opinions about the safety guard's effectiveness are without merit.  *See* Appellant's Br. at 19 ("Prokraft and Karzinka should not have been permitted to establish the safety and efficacy of the guard exclusively through the deposition testimony of Plaintiff's expert, . . .").  "[O]n summary judgment[,] the court is *required to consider all relevant, admissible evidence submitted by the parties* and contained in 'pleadings, *depositions*, answers to interrogatories, and admissions on file, together with . . . affidavits. . . .'"  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (emphases added) (quoting Fed. R. Civ. P. 56(c)); *see also Beechler v. Kill Bros. Co.*, 170 A.D.3d 1606, 1607 (N.Y. App. Div. 2019) (finding that "defendants established their entitlement to summary judgment . . . 'by presenting competent evidence that [the] product was not defective,'" where "[t]he deposition testimony . . . established that the [safety] guard was present on this particular unit at the time it left the manufacturer's control" and defendant's expert "opined that plaintiff's injuries would not have occurred if the steel safety guard had not been removed" (alteration in original) (quoting *Ramos v. Howard Indus., Inc.*, 10 N.Y.3d 218, 221 (2008))).

8

*Constr. Corp.*, 77 N.Y.2d 525, 532 (1991))). Indeed, Khusenov admits that the butchers at the Meat Store decided to remove the safety guard and that it needed to be cut off with a metal grinder because it could not be removed with a hammer. Thus, Appellees have established and a reasonable jury could only find that the meat grinder was substantially modified in a way that "destroy[ed] the functional utility of a key safety feature." *Hoover*, 23 N.Y.3d at 55–56 (quoting *Robinson*, 49 N.Y.2d at 481). And while a plaintiff may defeat a substantial modification defense "by showing that a product is purposefully manufactured to permit its use without a safety feature", *id.* at 56 n.7 (internal quotation marks omitted), the record is devoid of any evidence establishing that the meat grinder was intentionally manufactured to be used without the safety guard.

Lastly, Khusenov's failure-to-warn claim fails because the warning label was not the proximate cause of his injury. "A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known." *Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 237 (1998). But "failure to warn claims should [be] dismissed [when] there is no evidence that any such failure was a proximate cause of the injury." *Reis v. Volvo Cars of N. Am., Inc.*, 73 A.D.3d 420, 423 (N.Y. App. Div. 2010); *see also Buono v. Tyco Fire Prods., LP*, 78 F.4th 490, 497–98 (2d Cir. 2023) (noting that a plaintiff asserting failure-to-warn claims is required to prove that the warning's inadequacy is the proximate cause of their injuries). "[W]here the injured party was fully aware of the hazard through general knowledge, observation or common sense, . . . lack of a warning about that danger may well obviate the failure to warn as a legal cause of an injury resulting from that danger." *Liriano*, 92 N.Y.2d at 241. In other words, when a "risk [is] well understood by the plaintiff, a warning would have made no

difference . . . [a]nd the failure to warn was therefore not a cause of the harm." *Burke v. Spartanics Ltd.*, 252 F.3d 131, 139 (2d Cir. 2001).

Khusenov claimed that he never saw any stickers or warning labels on the meat grinder, and in any case, the label was inadequate because it should have used "signal words" for "danger" rather than for "warning." *See* Appellant's Br. at 26; App'x at 289 ("The WARNING sign on the machine . . . needs to be replaced with a DANGER sign and placement of the sign needs to be enhanced such that the user can clearly see it when operating the machine."). However, Khusenov was fully aware through "general knowledge, observation [and] common sense" of the hazards of which he claimed he was never warned about. *Liriano*, 92 N.Y.2d at 241.[3] He used the meat grinder or one similar to it "four or five times a week" in the months leading up to the incident. App'x at 186–87; *see id.* at 188 (admitting that "most of the time" Khusenov used the meat grinder involved in the incident). Khusenov "[o]f course" knew to be careful when putting meat into the grinder, was "very cautious," and tried to put the meat in "slowly . . . to take care of [his] wrist [and] fingers." *Id.* at 190–91. He operated the meat grinder cautiously because "[i]t's common sense that under [his] hand . . . high speed accelerating stuff [was] working. [So] [o]f course [he would] be cautious." *Id.* at 191. And while he claimed he failed to appreciate that the meat grinder was "really dangerous," *id.*, he expressly understood, through "seeing what

---

[3] Contrary to Khusenov's suggestion, New York courts have held that a plaintiff's familiarity with a product may, under certain circumstances, fully negate any causal connection between the absence of an adequate warning and a plaintiff's injuries. *See, e.g.*, *Smith v. Stark*, 67 N.Y.2d 693, 694 (1986).

happen[ed] with the meat," that if he put his "hand too close to the auger, [his] fingers would get cut off." *Id.* at 192. Khusenov's uncontroverted testimony demonstrates, as a matter of law, that he fully appreciated the exact hazards he claimed he was inadequately warned about. Therefore, the district court properly granted summary judgment against Khusenov's failure-to-warn claim.

The Court has considered Khusenov's remaining arguments and finds them to be without merit.

\* \* \*

For the reasons set forth above, we conclude that Khusenov's claims were properly dismissed on summary judgment. Accordingly, we **AFFIRM** the district court's judgment.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11